FIRST DIVISION
NOVEMBER 05, 2007

No. 1-06-2690

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 06 CR 1984 |
| | ) | |
| JAMIE DIAZ, | ) | Honorable |
| | ) | Eddie A. Stephens, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE ROBERT E. GORDON delivered the opinion of the court:

Defendant Jamie Diaz was convicted of three counts of aggravated driving of a vehicle under the influence of alcohol following a bench trial. The trial court sentenced defendant to the 44 days he served in the Cook County Department of Corrections, as time considered served, and 2 years felony probation and assessed fines and fees including a $150 "crime lab driving under the influence (DUI) analysis" fee. Defendant's motion for a new trial was denied. Defendant appeals, arguing that (1) the State failed to prove him guilty beyond a reasonable doubt, (2) his trial counsel was ineffective, (3) the $150 crime lab DUI analysis fee should be vacated, since no lab analysis was conducted, (4) the assessed fees should be offset by a $5-per-day presentence credit for the 44 days he was incarcerated prior to sentencing, and (5) the mittimus should be corrected to reflect a conviction of only one count of driving a vehicle under the influence of alcohol.

BACKGROUND

The facts of this case are largely undisputed. At 8:44 p.m. on January 26, 2006, Officers Tyler and Tunzi "curbed" a motor vehicle driven by defendant after Officer Tyler observed defendant not wearing a seatbelt. The officer did not observe defendant violate any other traffic laws and, in addition, did not observe defendant swerved or perform any other unusual actions.

Officer Tyler approached the defendant's driver's-side window with a lit flashlight and asked defendant to tender his driver's license. Defendant responded that he did not have one. Tyler observed that defendant had bloodshot eyes, "mumbled" speech with a Hispanic accent, and a "moderate" odor of alcohol. Tyler asked defendant to exit his vehicle. Defendant, a slightly overweight male, complied, and as he exited his vehicle, the officer observed defendant sway and exhibit "a little bit of a balance issue."

Tyler conducted a horizontal gaze nystagmus (HGN) test. Nystagmus, a physiological phenomenon, is a term used to describe an involuntary jerking of the eyeball. " '[It] *** is characterized by a slow drift, usually away from the direction of gaze, followed by a quick jerk of recovery in the direction of gaze. A motor disorder, *it may be congenital or due to a variety of conditions affecting the brain, including ingestion of drugs such as alcohol* and barbiturates, palsy of lateral or vertical gaze, disorders of the vestibular apparatus and brainstem and cerebellar dysfunction.' " (Emphasis in original.) *People v. Buening*, 229 Ill. App. 3d 538, 539 (1992), quoting The Merck Manual of Diagnosis & Therapy 1980 (14th ed. 1982). "Horizontal gaze

2

nystagmus then is the inability of the eyes to maintain visual fixation as they are turned from side to side or move from center focus to the point of maximum deviation at the side." *Buening*, 229 Ill. App. 3d at 539, citing *State v. Garrett*, 119 Idaho 878, 881, 811 P2d 488, 491 (1991). The horizontal gaze nystagmus test as routinely performed by law enforcement officers consists of:

> " ' The driver [being] asked to cover one eye and focus the other on an object (usually a pen) held by the officer at the driver's eye level. As the officer moves the object gradually out of the driver's field of vision toward his ear, he watches the driver's eyeball to detect involuntary jerking. The test is repeated with the other eye. [It is believed by certain law enforcement agencies that,] [b]y observing (1) the inability of each eye to track movement smoothly, (2) pronounced nystagmus at maximum deviation and (3) onset of the nystagmus at an angle less than 45 degrees in relation to the center point, the officer can estimate whether the driver's blood alcohol content (BAC) exceeds the legal limit *** .' " *Buening*, 229 Ill. App. 3d at 539-40, quoting *State v. Superior Court*, 149 Ariz. 269, 271, 718 P.2d 171, 173 (1986).

Tyler testified that he explained how to perform the HGN test to defendant and that defendant confirmed that he understood. Tyler administered the HGN test by moving a pen from side-to-side at defendant's eye level. Tyler testified that defendant's

eyes jerked while following the pen and when they were at maximum deviation, leading the officer to opine that defendant was under the influence of alcohol.

Tyler also conducted a one-leg-stand test. Tyler instructed defendant to place his legs together with his arms at his side and then raise his right leg in the air and count to 30. Defendant was unable to complete the one-leg-stand test.

After these visual observations were completed, defendant was arrested for driving a vehicle while under the influence of alcohol and was also ticketed for failing to wear a seatbelt while operating an automobile. Defendant was taken to the police station for processing. Tyler requested defendant to take a Breathalyzer test and to answer the questionnaire on the back of the alcohol influence report, but defendant declined to do either.

The officer read defendant his *Miranda* rights, after which defendant stated that he was not going to answer any more questions. Notwithstanding that reply, Tyler immediately asked defendant if he had been drinking, and defendant stated that he had consumed two beers and was going out for more when the officers pulled him over. Tyler then ran defendant's name through the police database and found that he had two prior convictions for driving a vehicle under the influence of alcohol and that his driver's license was revoked. 625 ILCS 5/11-501(a)(2) (West 2006). Section 11-501(a)(2) of the Illinois Vehicle Code (Vehicle Code) states: "(a) A person shall not drive or be in actual physical control of any vehicle within [the State of Illinois] while: *** (2) under the influence of alcohol." 625 ILCS 5/11-501(a)(2) (West 2006).

4

Defendant was charged with three counts of aggravated driving of a vehicle while under the influence of alcohol. Count I charged defendant with violating section 11-501(a)(2) of the Vehicle Code for a third time during a period in which his driving privileges were revoked. 625 ILCS 5/11-501(c-1)(2) (West 2006). Count II charged defendant with violating section 11-501(a)(2) of the Vehicle Code while his driving privileges were revoked. 625 ILCS 5/11-501(c-1)(1) (West 2006). Count III charged defendant with violating section 11-501(a)(2) of the Vehicle Code for a third time. 625 ILCS 5/11-501(d)(1)(A) (West 2006).

At trial, Officer Tyler testified to his familiarity with the behavior of individuals under the influence of alcohol, both as a police officer for 3 ½ years and from his personal life. He testified that he utilized the HGN procedure he learned at the police academy and adhered to the "three guidelines" regarding HGN testing but could not recall the third guideline on direct examination. He also stated that he uses his "book" and is not required to remember the guideline procedures for HGN testing.

On cross-examination, the officer testified that factors other than intoxication, such as fatigue, can cause nystagmus and difficulty balancing. He stated that he did not know whether defendant suffered from any "physical[] issues" that could have caused the nystagmus aside from alcohol. Tyler further ceded that defendant could have had physical issues that would have precluded him from successfully completing the one-leg-stand test.

The parties stipulated that defendant had his driver's license revoked pursuant to section 11-501 of the Vehicle Code (625 ILCS 5/11-501 et seq. (West 2000)) on October 9, 2001, and again on November 1, 2001, on separate traffic citations. The State entered defendant's traffic abstract into evidence without objection, which documented two prior convictions for driving under the influence convictions and a license suspension in effect on January 26, 2006.

Defendant presented no evidence and did not testify on his own behalf, after defendant's motion for an acquittal was denied.

The trial court found defendant guilty on all three counts of aggravated driving under the influence of alcohol, noting the visual observations of Officer Tyler upon "curbing" defendant's vehicle, defendant's inability to complete the one-leg stand test, the positive results of the HGN test, and defendant's admission to having consumed two beers. The trial court orally found that counts II and III merged into count I, although the mittimus lists guilty findings on all three counts. The court sentenced defendant to the 44 days he had served and assessed fines and fees in the amount of $1,905.

ANALYSIS

On appeal, defendant first contends that he was not proven guilty beyond a reasonable doubt. Specifically, defendant argues that the State's case was based solely on Officer Tyler's testimony concerning his observations, which were insufficient to

6

prove defendant guilty of aggravated driving a vehicle under the influence of alcohol beyond a reasonable doubt.

Illinois law prohibits any person from (1) "driv[ing] or be[ing] in actual physical control of any vehicle" while (2) under the influence of alcohol. 625 ILCS 5/11-501(a)(2) (West 2006). The statute includes a number of aggravating factors, which elevate the penalty from a misdemeanor to a felony. The three specific aggravating factors at issue in this case create felony violations for driving a vehicle under the influence of alcohol "during a period in which [defendant's] driving privileges are revoked" (625 ILCS 5/11-501(c-1)(1) (West 2006)), driving under the influence of alcohol for a "third time, if the third violation occurs [while defendant's] driving privileges are revoked" (625 ILCS 5/11-501(c-1)(2) (West 2006)), and driving under the influence of alcohol "for the third or subsequent time" (625 ILCS 5/11-501(d)(1)(A) (West 2006)).

As noted, the parties stipulated that defendant had his driver's license revoked at the time of his arrest and that defendant had two prior convictions for driving under the influence of alcohol. Accordingly, disposition of defendant's sufficiency of the evidence argument turns on whether the State proved defendant guilty of a violation of section 11-501(a)(2) of the Vehicle Code beyond a reasonable doubt.

The critical inquiry on review of a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable

7

doubt. *People v. Cunningham*, 212 Ill. 2d 274, 278 (2004). It is not the function of this court to retry the defendant. *People v. Collins*, 106 Ill. 2d 237, 261 (1985). After a guilty finding, the fact finder's role as weigher of evidence is preserved though a legal conclusion that, upon judicial review, all of the evidence is considered in the light most favorable to the prosecution. *People v. Migliore*, 170 Ill. App. 3d 581, 592 (1988). The trier of fact determines witnesses' credibility. *People v. Ortiz*, 196 Ill. 2d 236, 259 (2001). We will not set aside a conviction unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt as to the defendant's guilt. *People v. Cox*, 195 Ill. 2d 378, 387 (2001).

In a prosecution for driving a vehicle under the influence of alcohol, the State must establish that (1) the defendant was in actual physical control of a vehicle, and (2) was under the influence of alcohol at the time. 625 ILCS 5/11-501(a)(2) (West 2006). In order to prove that defendant was under the influence, the State must prove that as a result of consuming alcohol or any intoxicating compound, the defendant was unable to " 'think or act with ordinary care.' " Quoting Illinois Pattern Jury Instructions, Criminal, No. 23.29 (4th. ed. 2000). *People v. Bostelman*, 325 Ill. App. 3d 22, 34 (2001); The State need not present chemical evidence of intoxication in the form of a Breathalyzer or blood test to obtain a conviction; rather, the credible testimony of the arresting officer may be sufficient to prove the offense. *People v. Janik*, 127 Ill. 2d 390, 402 (1989). Additionally, a trial court may find a conviction for driving under the influence of alcohol based on circumstantial evidence. *People v. Toler*, 32 Ill. App. 3d 793, 799

(1975). Circumstantial evidence is proof of certain facts and circumstances from which the fact finder may infer other connected facts which usually and reasonably follow from the human experience and is not limited to facts that may reasonably have alternative, innocent explanations. *People v. Garriott*, 253 Ill. App. 3d 1048, 1052 (1993). The State bears the burden of proving each element of the charged offense beyond a reasonable doubt. *People v. Bostelman*, 325 Ill. App. 3d 22, 33 (2001).

After weighing the evidence in the light most favorable to the prosecution, we cannot say the evidence was so improbable or unsatisfactory as to raise a reasonable doubt as to defendant's guilt. The evidence presented against defendant was sufficient to convict defendant, without considering the statement (admission) made by defendant at the police station that he had consumed two beers and the findings of the HGN test.

After "curbing" defendant's vehicle, Officer Tyler observed defendant with bloodshot eyes, "mumbled" speech, and a "moderate" odor of alcohol. The officer's testimony that defendant failed to complete a one-leg-stand test and that the defendant exhibited a balance problem as he exited his vehicle was undisputed. Based on the officer's experience in observing people under the influence of alcohol, the officer opined that the defendant was driving a vehicle under the influence of alcohol. Finally, defendant refused to submit to a Breathalyzer test, which is circumstantial evidence of a defendant's consciousness of his own guilt. *People v. Garriott*, 253 Ill. App. 3d 1048, 1052 (1993). These facts, in combination, present sufficient evidence to conclude that a

reasonable trier of fact could have found defendant guilty of driving a vehicle under the influence of alcohol beyond a reasonable doubt.

As noted, defendant offered no evidence in this case and did not testify on his own behalf. On cross-examination, Tyler conceded that there could be alternative, innocent explanations for the evidence presented against defendant. In closing arguments, defendant, through his attorney, underscored several of these potential explanations. Defendant suggested that his bloodshot eyes could have been caused by allergies or a cold; argued that defendant was overweight, thus had difficulty smoothly exiting the vehicle and successfully performing the one-leg-stand test; argued that defendant speaks with an accent, thus the officer perceived his accent as "mumbled speech." However, defendant's closing argument is not evidence and cannot be considered as evidence. *People v. Perry*, 224 Ill. 2d 312, 348 (2007). It is true that Officer Tyler testified that factors other than intoxication, such as fatigue, could contribute to poor performance of field sobriety tests. However, no evidence in the record suggests that defendant was actually fatigued when he was asked to perform the field sobriety tests administered by Officer Tyler.

The burden of proof was on the State to prove the defendant guilty beyond a reasonable doubt. The defendant has no burden and need not testify or present any evidence, and he exercised that privilege. However, in this case the evidence presented by the State, consisting of the officer's testimony, constituted sufficient evidence to convict when the trial court found the officer's testimony credible.

In light of the foregoing, we find that the evidence presented in this case before the trial court was not so improbable or unsatisfactory that it created a reasonable doubt as to defendant's guilt of driving a vehicle under the influence of alcohol.

Defendant next contends that his trial counsel was ineffective. Specifically, defendant contends that (1) his counsel was ineffective for failing to move the trial court to suppress his statement that he had consumed two beers, after invoking his right to remain silent, and (2) for failing to move the trial court to conduct a *Fyre* hearing before hearing testimony regarding the HGN test results, and (3) for failing to object to the HGN test results.

"To prevail on a claim of ineffective assistance of counsel, a defendant must show that his attorney committed such serious errors as to fall beyond an objective standard of reasonableness, and that, without those objectively unreasonable errors, there was a reasonable probability that his trial would have resulted differently." This is a two-prong test. *People v. Ward*, 371 Ill. App. 3d 382, 434 (2007), citing *Strickland v. Washington*, 466 U.S. 668, 687-94, 80 L. Ed. 2d 674, 693-98, 104 S. Ct. 2052, 2064-68 (1984); *People v. Albanese*, 104 Ill. 2d 504, 526 (1984). "In *Strickland*, the United States Supreme Court delineated the two-prong test to use when evaluating whether a defendant was denied the effective assistance of counsel in violation of the *sixth amendment*." (Emphasis added.) *People v. Bell*, 373 Ill. App. 3d 811, 821 (2007). "Under *Stickland*, a defendant must demonstrate that counsel's performance was deficient and that such deficient performance substantially prejudiced defendant." *Bell*, 373 Ill. App. 3d at 821,

11

citing *Strickland*, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064. Our Illinois Supreme Court has stated that to demonstrate performance deficiency, a defendant must establish that counsel's performance was below an objective standard of reasonableness. *People v. Edwards*, 195 Ill. 2d 142, 163 (2001). In evaluating sufficient prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding[s] would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068.

As noted, defendant's first contention under *Strickland* is that defense counsel was ineffective for failing to move the trial court to suppress defendant's statement at the police station that he had consumed two beers.

To protect an individual's right not to be a witness against himself, found in both the United States and Illinois Constitutions (see U.S. Const., amend. V; Ill. Const. 1970 art. I, §10), interrogation must cease once the individual indicates in any manner and at any time prior to or during a custodial interrogation that he wishes to remain silent. *People v. Edwards*, 301 Ill. App. 3d 966, 977 (1998), citing *Miranda v. Arizona*, 384 U.S. 436, 444-45, 16 L. Ed. 2d 694, 707, 86 S. Ct. 1602, 1612 (1966). "[A]ny statement taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise." *Miranda*, 384 U.S. at 474, 16 L. Ed. 2d at 723, 86 S. Ct. at 1628.

This right to silence may be invoked either verbally or through conduct that clearly indicates a desire to end all questioning. See *People v. Nielson*, 187 Ill. 2d 271,

12

287 (1999) (finding the defendant had invoked his right to remain silent when he placed his hands over his ears, turned his head, and chanted "nah nah nah"). If verbal, the individual's demand to end the interrogation must be specific. See *People v. Pierce*, 223 Ill. App. 3d 423, 429 (1991). It is undisputed here that defendant invoked his right to remain silent.

Upon being informed of his rights, including his right to remain silent, defendant stated that he desired to answer no more questions. Immediately upon invocation of his right to remain silent, defendant was asked if he had consumed any alcohol that day. Defendant responded that he had consumed two beers and was going out for more prior to being pulled over.

We can imagine no clearer example of a violation of defendant's right to remain silent. Once a suspect invokes his right to remain silent, interrogation must immediately cease. *People v. R.C.*, 108 Ill. 2d 349, 353 (1985). Rather than terminating the interrogation immediately, which is what *Miranda* requires, the officer instantaneously asked defendant if he had consumed any alcohol.

Although the statement was taken in violation of *Miranda*, counsel's failure to object to the admission of the statement cannot necessarily be said to fall below an objective standard of reasonableness. Even though the statement that defendant had consumed two beers was a clear result of a *Miranda* violation, this court cannot say that the first prong of the *Strickland* test was satisfied. It may have been sound trial strategy to allow that evidence to stand and either argue to the court that two beers did not contain

13

enough alcohol to affect defendant's operation of the automobile when no unusual driving was evident or conclude that the trial court reasonably could find that two beers did not effect the defendant's operation of his automobile. *Ward*, 371 Ill. App. 3d at 434 (a mistake in trial strategy or tactics, without more, does not amount to ineffective assistance of counsel); *People v. Palmer*, 162 Ill. 2d 465, 476 (1994) (counsel's trial strategy is "virtually unchallengeable").

However, even if counsel's failure to move to suppress this evidence satisfies the first prong, defendant cannot satisfy the second prong of his ineffective assistance of counsel claim because he was not sufficiently prejudiced by his counsel's failure to move to suppress the station house statement. As noted, under the second prong of the *Strickland* standard, the defendant must show that, "but for" counsel's deficient performance, there is a reasonable probability that the result of the proceeding would have been different. *People v. Colon*, 225 Ill. 2d 125, 135 (2007); *People v. Evans*, 209 Ill. 2d 194, 220 (2004). "[A] reasonable probability that the result would have been different is a probability sufficient to undermine confidence in the outcome – or put another way, that counsel's deficient performance rendered the result of the trial unreliable or fundamentally unfair." *Evans*, 209 Ill. 2d at 220; *Colon*, 225 Ill. 2d at 135.

As explained above, even if the station house statement were suppressed, it is not likely that the result of the trial would have been any different. In light of the overwhelming evidence of defendant's guilt including the officer's testimony regarding

14

his observations and defendant's own refusal to take a Breathalyzer, we find defendant cannot satisfy the second prong of the *Strickland* test.

Defendant then argues that his counsel was ineffective for failing to move the trial court to conduct a *Frye* hearing to determine the admissibility of the HGN test results.

General acceptance in the scientific community was established as the foundational test for the admission of scientific evidence in *Frye v. United States*, 293 F. 1013, 1014 (D.C. Cir. 1923), a case involving the admissibility of polygraph tests:

> "Just when a scientific principle or discovery crosses the line between the experimental and demonstrable stages is difficult to define. Somewhere in this twilight zone the evidential force of the principle must be recognized, and while the courts will go a long way in admitting expert testimony deduced from a well-recognized scientific principle or discovery, the thing from which the deduction is made must be sufficiently established to have gained general acceptance in the particular field in which it belongs." *Frye v. United States*, 293 F. at 1014.

The Illinois Supreme Court recently held that a *Frye* hearing must be held to determine if the HGN test has been generally accepted as a reliable indicator of alcohol impairment. *People v. McKown*, No. 102372, slip op. At 2 (September 20, 2007). Based on our supreme court's decision in *McKown*, it is now clear that defense counsel

15

should move for a *Fyre* hearing, so that the trial court can determine whether the results of the HGN test are admissible. However, on the date of this trial, the existing case law did not require a *Frye* hearing for the admissibility of the HGN test (*People v. Robinson*, 349 Ill. App. 3d 622 (2004)). As a result, this court cannot say that the failure to request a *Frye* hearing was a serious error that fell below an objective standard of reasonableness sufficient to satisfy the first prong of the *Strickland* test.

In addition, even if the first prong of the *Strickland* test were satisfied, the admission of this evidence would be harmless error. " '[W]hen the competent evidence in the record establishes the defendant's guilt beyond a reasonable doubt and it can be concluded that retrial without the erroneous admission of the challenged evidence would produce no different result,' " the admission of the improper evidence can be considered harmless error. *McKown*, Slip op. At 26. Quoting *People v. Arman*, 131 Ill. 2d 115, 124 (1989).

In the case at bar, even if the results of the HGN test were not admitted into evidence, it is not likely that the result of the trial would have been any different. In light of the overwhelming evidence of defendant's guilt from the officer's testimony regarding his observations, and, his opinion based on those observations that defendant was driving a vehicle under the influence of alcohol, together with defendant's refusal to take a Breathalyzer, we find that if the admission of the HGN results without first conducting a *Frye* hearing to determine its admissibility was error, it was harmless.

Defendant then argues that his trial counsel was ineffective for failing to object to the admission of the results of the HGN test because the State failed to lay a proper foundation.

To lay a proper foundation for the admission of HGN results, the State needs to demonstrate (1) that the officer who administered the test was trained in the procedure and (2) that the test was properly administered. *People v. Basler*, 193 Ill. 2d 545, 552 (2000). The State's evidence included Tyler's testimony that he administered the test following the "book" and the "three guidelines" that he learned at the police academy, although he testified that he could not remember the third guideline at trial. Tyler also testified that when he moved his pen from side-to-side, defendant's eyes exhibited nystagmus. The State agrees that the foundation for the admission of the HGN test results was lacking. However, we are persuaded by the State's argument that defense counsel's failure to object to the admission of the HGN test results could have been sound trial strategy.

A review of the record reveals that defense counsel attacked Officer Tyler's credibility during closing arguments, specifically highlighting the officer's inability to recall the third guideline when administering an HGN test. We find defense counsel's decision not to object to the admission of this evidence, so defendant could later attack the credibility of the officer during closing arguments, to be sound trial strategy. *Palmer*, 162 Ill. 2d at 476. As a result, defendant cannot satisfy the first prong of the *Strickland* test.

Even if defense counsel had made the objection to the foundation of the HGN evidence and that objection was sustained, counsel's failure to object would not have resulted in a different trial outcome, as mandated by the second prong of the *Strickland* test. *People v. Evans*, 186 Ill. 2d 83, 93 (1999). This court cannot say that there is a reasonable probability of a different outcome because, even if defense counsel had opposed the admission of the HGN test, it is likely that the State would have immediately cured the foundation deficiency by asking more questions concerning Tyler's knowledge and experience with the HGN test. Even if the State did not cure the foundational deficiencies for admission of the HGN results, this court cannot say that the second prong of the *Strickland* test would have been satisfied.

Looking at the totality of the evidence, the trial court observed Tyler's demeanor, found him to be credible, and gave credence to the aggregate evidence at trial that showed that defendant was driving a vehicle under the influence of alcohol, aside from the results of the HGN test. We conclude that counsel's failure to object to the admission of the HGN test results did not "undermine confidence in the outcome" of the trial, and would have not changed the result. *Strickland*, 466 U.S. at 694, 80 L.Ed. 2d at 698, 104 S. Ct. at 2068.

In addition, defendant argues that the trial court's mittimus should be corrected to accurately reflect the correct total of fines, fees, and costs.

Defendant was ordered to pay fines and fees that included charges of: $190 (felony complaint filed), $60 (felony complaint conviction, $20 (preliminary hearing),

18

$200 (state DNA identification system), $20 (automation), $15 (document storage), $15 (court services), $5 (court system), $1,000 (DUI – law enforcement – subsequent offense), $30 (court system), $150 (crime lab DUI analysis), $100 (trauma fund), and $5 (spinal cord trauma fund). The trial court's mittimus incorrectly states that these fines, fees, and costs add up to $1,905, rather than the correct sum of $1,805. Defendant argues that the trial court erred by ordering a $150 crime law DUI analysis fee, since no analysis occurred in this case. We agree. Under section 5-9-1.9 of the Unified Code of Corrections (730 ILCS 5/5-9-1.9 (West 2006)) a $150 crime lab DUI analysis fee should be assessed in each case where a laboratory analysis occurs. Since no DUI analysis occurred here, the $150 fee must be vacated.

In addition, defendant argues that he is entitled to a $5-per-day credit toward the $1,000 "DUI – Law Enforcement – Subsequent Offense" fine. We agree. Section 11-501(j) states that a person found guilty of driving a vehicle under the influence of alcohol shall be fined $1,000 when the person has previously been convicted of this same offense or a similar provision of a local ordinance. 625 ILCS 5/11-501(j) (West 2006). This fine is subject to the mandatory credit of $5 for each day that the defendant was incarcerated. 725 ILCS 5/110-14(a) (West 2004). Accordingly, defendant was incarcerated 44 days and is entitled to a $220 credit toward the $1,000 fine.

Finally, defendant argues that the mittimus should be corrected to reflect the conviction of only one count of aggravated driving a vehicle under the influence of alcohol to accurately reflect the trial court's oral pronouncement that the other counts in

19

the information would merge with the first. We agree with defendant and find that the mittimus should be corrected to reflect the proper sentence imposed by the court.

Remandment to the trial court is unnecessary in this case since this court has the authority to directly order the clerk of the circuit court, criminal division, to make the necessary corrections. 134 Ill. 2d R. 615(b)(1); *People v. McCray*, 273 Ill. App. 3d 396, 403 (1995). Accordingly, this court directs said clerk (a) to correct the mittimus to reflect defendant was convicted of one count of aggravated driving a vehicle under the influence of alcohol, and (b) to correct the trial court's mittimus to accurately reflect that all fines, fees, and costs with credits result in $1,435 assessed against defendant.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the circuit court of Cook County as modified. We vacate the $150 crime lab DUI analysis fine and find that all fines, fees, and costs, with credits, result in $1,435 assessed against defendant.

Affirmed as modified.

WOLFSON and GARCIA, JJ., concur.