2025 IL App (1st) 231315-U

Fourth Division
Filed May 22, 2025

No. 1-23-1315

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

|  |  |  |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Cook County |
| Plaintiff-Appellee, | ) | |
| v. | ) ) ) | Nos.    YN00516926, YN00516927, YN00516928, YN00256929 |
| SADIE HARRIS, | ) ) | The Honorable Rouhy J. Shalabi, |
| Defendant-Appellant. | ) ) | Judge, presiding. |

JUSTICE OCASIO delivered the judgment of the court.
Justices Hoffman and Lyle concurred in the judgment.

**ORDER**

¶ 1    *Held*: Defendant's convictions for improper lane usage, operating an uninsured motor vehicle, and driving without a valid driver's license are reversed where the State's evidence was insufficient to prove defendant guilty beyond a reasonable doubt. Defendant's conviction for driving under the influence is affirmed.

¶ 2    Defendant, Sadie Harris, appeals her convictions for driving under the influence of alcohol (DUI), improper lane usage, driving without a valid driver's license, and operating an uninsured motor vehicle. She argues that the evidence was insufficient to sustain her convictions. For the following reasons, we find that the evidence was sufficient to sustain her conviction for DUI, which we affirm, but insufficient to sustain her remaining convictions, which we reverse.

¶ 3                                    I. BACKGROUND

¶ 4        Harris was formally charged with several offenses, including DUI (625 ILCS 5/11-501(a)(2) (West 2022)), improper lane usage (625 ILCS 5/11-708(b) (West 2022)), operating an uninsured motor vehicle (625 ILCS 5/3-707(a) (West 2022)), and driving without a valid driver's license (625 ILCS 5/6-101 (West 2022)). On December 14, 2021, a bench trial commenced. Officer Mendoza[1] testified she had been employed with the Berwyn Police Department for two years. Previously, she had attended the Berwyn police academy, where she received training on DUI detection and investigation. Officer Mendoza testified that, in her professional and personal life, she had observed individuals under the influence of alcohol on more than 20 occasions.

¶ 5        On September 3, 2022, at around 3:30 a.m., Officer Mendoza was dispatched to the site of a car accident at the 2800 block of Harlem Avenue. Upon arriving at the scene, she saw that a car had crashed into a tree. The front of the vehicle had "pretty extensive damage," and the side airbags for the driver's and passenger's seats had deployed.

¶ 6        At trial, Officer Mendoza testified that she saw Harris exit the driver's side of the vehicle and fall to the ground approximately four to five feet away from the car. Officer Mendoza testified that Harris had bloodshot, watery eyes, and she was unsteady. Further, Officer Mendoza testified that she "smelled an alcoholic beverage on [Harris's] breath." The smell of alcohol "was strong." Officer Mendoza testified that she searched Harris's car for her driver's license and insurance but was "met with negative results." Officer Mendoza observed an open can of Monaco cocktail, an alcoholic beverage, in the back of the car. The can "was empty, and cold to the touch."

¶ 7        Officer Mendoza testified that she did not conduct standardized field sobriety tests "due to [Harris] being unstable and the strong odor of alcohol." Officer Mendoza was unable to understand Harris's answers to her questions. Harris was transported to the hospital. At the hospital, Officer Mendoza read Harris her Warnings to Motorists, which Harris stated she understood. Officer Mendoza testified she believed Harris was under the influence of alcohol based on her "not [being]

_____

[1] Officer Mendoza's first name was not given at trial and does not appear in the record.

able to stand up, losing her balance, falling on the ground, the strong odor of alcohol, [and] the bloodshot eyes, glassy, watery."

¶ 8       On cross examination, Officer Mendoza agreed that she neither saw Harris driving nor how the accident occurred. Additionally, Officer Mendoza agreed that "[a]n odor of alcohol does not tell you much alcohol was consumed" or when. Officer Mendoza stated she did not know how long the empty can of Monaco had been in the back seat.

¶ 9       Officer Mendoza acknowledged that there can be reasons, other than intoxication, that cause a person's eyes to be watery, such as tiredness or injury in an accident. Officer Mendoza testified that she could not understand Harris's speech because she was mumbling. In her report, Officer Mendoza noted that when she asked if she was Sadie Harris, Harris answered affirmatively. Additionally, Harris's "attitude" was sleepy.

¶ 10      At 5:27 a.m., Officer Mendoza asked Harris if she would consent to a DUI kit. Harris initially consented to the kit. Harris waited for the kit to arrive while handcuffed to the hospital bed. While she was waiting, Harris became impatient. When the DUI kit arrived at 6:22 a.m., Harris refused to take the DUI kit and was discharged from the hospital. Officer Mendoza did not ask Harris to take a preliminary breath test at the scene of the accident and she did not ask Harris to take a breathalyzer at the hospital.

¶ 11      On redirect, Officer Mendoza testified that she did not ask Harris to perform any test at the scene of the accident "[d]ue to her circumstances, not being able to stand up, not being able to understand her speaking, unstable, losing balance."

¶ 12      The court found Harris guilty of all four charges. The court stated it "[was] convinced that the defendant did crash into a pole. That the defendant did have a strong odor of alcohol, fell to the floor, was unsteady, had watery, bloodshot eyes and was not understandable." The court found the testimony of Officer Mendoza credible. The court noted, "we have heard no evidence, or none was presented, that [Harris] suffered any injury as a result of the accident or the air bags affecting her in any way that she would have been injured." The court noted there was an empty can of alcohol found in Harris's car and there was "a strong odor of alcohol, according to the Officer."

The court also noted "defendant at the hospital agreed to take the test and then refused. An hour later to me is not a reasonable delay that would make her change her mind and not want to take the test." The court found "that all the evidence together, in my mind, defendant is guilty of driving under the influence of alcohol." The court further stated, "I have heard no explanation as to how the accident occurred or what would cause her to leave the roadway and hit a pole. There will be a finding of guilty to improper lane usage." Finally, the court stated that no driver's license or proof of insurance was presented at the scene of the accident, and no evidence was presented in court.

¶ 13    Harris filed a motion to reconsider, which the court denied. Harris was sentenced to 12 months of supervision for DUI and four months of supervision for each of the remaining convictions, to run concurrently with her sentence for DUI.

¶ 14                                II.  ANALYSIS

¶ 15    On appeal, Harris argues the State failed to find her guilty beyond a reasonable doubt of DUI, improper lane usage, operating an uninsured motor vehicle, and driving without a valid driver's license.

¶ 16    In considering a challenge to the sufficiency of the evidence, the question is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *People v. Jackson*, 2020 IL 124112, ¶ 64. The reviewing court does not retry the defendant and will not substitute its judgment for that of the trier of fact for issues involving credibility of witnesses and weight of the evidence. *People v. Jackson*, 232 Ill. 2d 246, 281 (2009). A conviction will not be reversed unless the evidence is " 'unreasonable, improbable, or so unsatisfactory as to justify a reasonable doubt of the defendant's guilt.' " *Id.* (quoting *People v. Campbell*, 146 Ill. 2d 363, 375 (1992)).

¶ 17                        A. Driving Under the Influence

¶ 18    To sustain a conviction for DUI, the State must prove beyond a reasonable doubt that the defendant was (1) in actual physical control of a vehicle and (2) under the influence of alcohol. 625 ILCS 5/11-501(a)(2) (West 2022). The State must prove that the defendant's ability to operate

a motor vehicle was impaired by the consumption of alcohol. *People v. Diaz*, 377 Ill. App. 3d 339, 344 (2007). Here, Harris only challenges the second element.

¶ 19 To prove a defendant was under the influence of alcohol, the State must prove "as a result of drinking any amount of alcohol, his mental or physical faculties [were] so impaired as to reduce his ability to think and act with ordinary care." *People v. Gordon*, 378 Ill. App. 3d 626, 631 (2007) (quoting Illinois Pattern Jury Instructions, Criminal No. 23.29 (4th ed. 2000)). Meaning that "[a] defendant is guilty of driving under the influence if the prosecution proves that a driver was under the influence of a drug or alcohol to a degree that rendered him incapable of driving safely." *Id.* at 631-32 (citing *People v. Workman*, 312 Ill. App. 3d 305 (2000)). Intoxication is a matter for the trier of fact to decide along with evaluating the credibility of witnesses. *People v. Janik*, 127 Ill. 2d 390, 401 (1989). Circumstantial evidence may be used to prove that the defendant committed the crime of DUI. *People v. Diaz*, 377 Ill. App. 3d 339, 345 (2007).

¶ 20 Harris asserts that the State lacked evidence that she was impaired from consuming alcohol and the State's case was based solely on the observations of Officer Mendoza. The testimony of a single, credible police officer may sustain a conviction of DUI. *People v. Phillips*, 2015 IL App (1st) 131147, ¶ 18. The trier of fact may consider the officer's observations—such as the defendant's conduct, speech, or appearance, the odor of alcohol on the defendant's breath, and testimony regarding the defendant's performance of field sobriety tests—in deciding whether the defendant was under the influence of alcohol. *People v. Groebe*, 2019 IL App (1st) 180503, ¶ 57. "Any evidence of alcohol consumption is relevant to the issue of impairment." *Id.* ¶ 58.

¶ 21 Here, the circuit court found the testimony of Officer Mendoza credible. Officer Mendoza testified she saw Harris exit the driver's side of the vehicle and fall to the ground. Officer Mendoza could smell a strong odor of alcohol on Harris's breath. Further, there was an open, empty container for an alcoholic beverage on the back seat of Harris's vehicle. Harris's eyes were bloodshot and watery. Officer Mendoza was unable to perform any tests at the scene "[d]ue to her circumstances, not being able to stand up, not being able to understand her speaking, unstable, losing balance." Harris argues that the circuit court unreasonably inferred that her inability to stand, her bloodshot,

watery eyes, and her mumbled speech were due to alcohol consumption, not the accident. Nevertheless, Officer Mendoza's testimony regarding her observations of Harris, such as her bloodshot, watery eyes, her inability to stand up from the ground, and a strong odor of alcoholic beverage on her breath, when viewed in a light most favorable to the State, permitted a rational trier of fact to find, beyond a reasonable doubt, that Harris was driving under the influence of alcohol. See *People v. Elliot*, 337 Ill. App. 3d 275, 281 (2003) (finding that the officer's testimony that the defendant's breath smelled of alcohol, had bloodshot eyes, and his speech was slurred was "relevant evidence of physical and mental impairment").

¶ 22    Additionally, refusal to submit to testing is circumstantial evidence of defendant's consciousness of guilt. *People v. Weathersby*, 383 Ill. App. 3d 226, 230 (2008). Officer Mendoza testified that Harris initially agreed to submit to a DUI kit; however, after a period of waiting, she left the hospital before taking the DUI kit. Harris asserts, however, the circuit court heard evidence to infer she refused to take the test for "innocent reasons." Nonetheless, it was proper for the circuit court to consider Harris's refusal to submit to the DUI kit as additional evidence that she was under the influence of alcohol. Therefore, we conclude that there was sufficient evidence, when viewed in the light most favorable to the State, to establish beyond a reasonable doubt that Harris was driving under the influence of alcohol.

¶ 23                              B. Improper Lane Usage

¶ 24    While both parties make arguments regarding the sufficiency of the evidence for improper lane usage, neither rely on the same statute. Harris argues that the circuit court irrationally found her guilty of improper lane usage under 625 ILCS 5/11-709 (West 2022). The State initially argues there was sufficient evidence to convict under 625 ILCS 5/11-701(b) (West 2022); however, it later cites to 625 ILCS 5/11-708(b) (West 2022) and argues that it is a strict liability offense. A traffic citation should adequately notify a defendant of the charges against her by naming the offense and citing the relevant statute. *City of Highland Park v. Fogel-Pollack*, 2023 IL App (2d) 220336, ¶ 22 (citing *People v. Tammen*, 40 Ill. 2d, 76, 79 (1968)). The record indicates that Harris was charged

and convicted under 625 ILCS 5/11-708(b) (West 2022) and the traffic ticket indicates the listed charge as "improper lane usage." We find that under either 625 ILCS 5/11-709 (West 2022) or 625 ILCS 5/11-708(b) (West 2022) there was insufficient evidence to convict Harris.

¶ 25     Under section 11-709(a), the State must prove (1) that the defendant was driving on a roadway divided into two or more clearly marked lanes, and (2) that the defendant did not drive as nearly practicable entirely within a single lane. 625 ILCS 5/11-709(a) (West 2022). Additionally, a conviction for driving in the wrong direction requires the State to prove that a defendant driving upon a roadway designated for one-way traffic, was not driving in the direction designated by official traffic control devices. 625 ILCS 5/11-708(b) (West 2022).

¶ 26     At trial, Officer Mendoza testified that she did not observe Harris driving or how the accident occurred. Officer Mendoza also testified that Harris's vehicle was in the northbound lane of traffic. The photos entered into evidence show that the incident occurred on a two-way street. There was no evidence that Harris was driving on a one-way street, or that she was driving in the wrong direction on said street. Further, there was no evidence showing that Harris did not stay as nearly practicable within the lane. See *People v. Schaefer*, 398 Ill. App. 3d 963, 974 (2010) (finding the evidence was insufficient to support a conviction for improper lane usage where there was no evidence of defendant driving in the wrong direction or swerving outside of his lane). Therefore, by viewing the evidence in light most favorable to the State, we find there was insufficient evidence to convict Harris under 625 ILCS 5/11-709 (West 2022) or 625 ILCS 5/11-708(b) (West 2022). Accordingly, we reverse Harris's conviction for improper lane usage.

¶ 27                    C. Driving an Uninsured Motor Vehicle

¶ 28     Harris argues that the State did not prove beyond a reasonable doubt that she did not have insurance. "No person shall operate a motor vehicle in this State unless the motor vehicle is covered by a liability insurance policy in accordance with Section 7-601 of this Code." 625 ILCS 5/3-707(a) (West 2022). The fact that a police officer was not shown proof of insurance, in the absence of evidence that an individual was asked to produce it, is "insufficient to prove beyond a

reasonable doubt, either directly or by reasonable inference, that the defendant was driving an uninsured vehicle." *People v. Merritt*, 318 Ill. App. 3d 115, 117 (2001).

¶ 29    The record indicates that the State presented no evidence that Harris did not have vehicle insurance when the offense occurred. Officer Mendoza testified that when she was at the scene of the accident, she searched Harris's car for her driver's license and proof of insurance. When it found Harris guilty, the circuit court stated: "There was no evidence of insurance at the scene or today in court, so there will be a finding of guilty ***." However, it is the State's burden to prove beyond a reasonable doubt the elements of the charged offenses, not the defendant's burden to show that reasonable doubt exists. *People v. Murray*, 2019 IL 123289, ¶ 28. The evidence, when viewed in the light most favorable to the State, was insufficient to prove beyond a reasonable doubt, directly or by reasonable inferences, that Harris was operating an uninsured motor vehicle. See *Merritt*, 318 Ill. App. 3d at 117 (finding that the evidence was insufficient as there was no indication that the police officer asked anyone to produce proof of insurance). Consequently, we reverse Harris's conviction for operating an uninsured motor vehicle.

¶ 30                    D. Driving Without a Valid Driver's License

¶ 31    Lastly, Harris argues the State failed to prove beyond a reasonable doubt that she drove without a valid driver's license. Section 6-101(a) of the Vehicle Code provides: "No person *** shall drive any motor vehicle upon a highway in this State unless such person had a valid license or permit[.]" 625 ILCS 5/6-101(a) (West 2022). Here, Officer Mendoza testified that she searched Harris's vehicle for a driver's license. Officer Mendoza did not testify to any further steps she took to confirm if Harris had a valid driver's license. Additionally, the State did not present any evidence to prove that Harris was driving without a valid driver's license at the time of the offense. Notably, there was no evidence that Officer Mendoza asked Harris for her driver's license or ran her name through LEADS, nor did the State introduce a certified copy of Harris's driving abstract. The State relied solely on the testimony of Officer Mendoza that she looked through Harris's vehicle for her driver's license.

¶ 32    The State has the burden of proving each element of a charged offense beyond a reasonable doubt. *People v. Murray*, 2019 IL 123289, ¶ 28. "[T]he defendant is under no obligation to produce any evidence, and the burden of proof never shifts to the defendant but remains the responsibility of the State throughout the trial." *Id*. When making its ruling, the circuit court stated: "The driver's license was never presented or shown at the scene since the inception of this case. I assume if there was a valid driver's license it would have been presented to the State. None was. And none was presented here today even. There will be a finding of guilty to no valid driver's license." The State did not present sufficient evidence to prove that Harris drove without a valid driver's license, and it was not Harris's obligation to present evidence in the contrary. Accordingly, we reverse Harris's conviction for driving without a valid driver's license.

¶ 33                                III.  CONCLUSION

¶ 34    Harris's conviction for driving under the influence of alcohol is affirmed; her convictions for improper lane usage, operating an uninsured motor vehicle, and driving without a valid driver's license are reversed.

¶ 35    Affirmed in part and reversed in part.