**NOTICE:** This order was filed under Illinois Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2026 IL App (3d) 240660-U

Order filed May 5, 2026

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2026

| | | |
|---|---|---|
| THE CITY OF WEST CHICAGO, | ) | Appeal from the Circuit Court |
| | ) | of the 18th Judicial Circuit, |
| Plaintiff-Appellee, | ) | Du Page County, Illinois, |
| | ) | |
| v. | ) | Appeal No. 3-24-0660 |
| | ) | Circuit No. 23-DT-1557 |
| | ) | |
| MOISES MENDOZA-MENDOZA, | ) | Honorable |
| | ) | Robert A. Miller, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

PRESIDING JUSTICE HETTEL delivered the judgment of the court.
Justices Holdridge and Anderson concurred in the judgment.

_____

**ORDER**

¶ 1     *Held*:  The evidence presented was sufficient to sustain defendant's conviction for driving while under the influence of alcohol.

¶ 2     Defendant, Moises Mendoza-Mendoza, appeals his conviction for driving while under the influence of alcohol (DUI), arguing the evidence introduced at trial was insufficient to prove him guilty beyond a reasonable doubt. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4       Defendant was charged with DUI (625 ILCS 5/11-501(a)(2) (West 2022)), improper lane usage (*id.* § 11-709(a)), driving without a valid license (*id.* § 6-101), and illegal transportation of alcohol (*id.* § 11-502(a)). Defendant waived his right to a jury trial, and, with the assistance of an interpreter, the case proceeded to a bench trial.

¶ 5       At trial, West Chicago police officer Blake Bertany testified that he had conducted approximately 170 DUI arrests during his nine-year career. He had received approximately 60 hours of DUI detection training and was certified in the administration of standardized field sobriety tests.

¶ 6       At approximately 10:48 p.m. on August 11, 2023, Bertany observed defendant's vehicle cross over the center line and then continue to travel onto the shoulder. While straddling the shoulder line, defendant's vehicle drove within "a few feet" of a pedestrian walking along the shoulder. As a result of his observations, Bertany initiated a traffic stop by activating his emergency lights and defendant stopped his vehicle in a nearby parking lot. The State introduced dash camera video from Bertany's squad car that showed defendant's vehicle crossed over the center line while completing a right turn. The vehicle then crossed onto the shoulder and briefly returned to the roadway before crossing onto the shoulder again.

¶ 7       Bertany's body camera video was also admitted as evidence. In the video, Bertany approached the driver's side of defendant's vehicle and proceeded to question and provide instructions to defendant in English. Bertany testified that defendant communicated with him in English and responded appropriately to his questions. Bertany asked defendant for his driver's license and proof of insurance. Defendant explained that he was giving his friend a ride home and that he had an appointment scheduled for his license the following week. Defendant provided Bertany with his driver's license, which had expired. Defendant continued to search for

2

his insurance card while Bertany returned to his squad car. A minute later, defendant approached the squad car and handed Bertany a document. Bertany replied that it had expired. The dash camera video showed defendant stumbling as he walked back to his vehicle from Bertany's squad car. Defendant initially denied consuming any alcohol but later admitted that he had one beer. Bertany smelled the strong odor of an alcoholic beverage emanating from defendant and noticed he had bloodshot eyes. Based on these observations, Bertany asked defendant to perform field sobriety tests.

¶ 8        Bertany first instructed defendant to perform the horizontal gaze nystagmus (HGN) test. Bertany testified that defendant swayed side to side during the test and had to be reminded to follow Bertany's finger with only his eyes. Bertany observed all six clues indicating alcohol consumption including a lack of smooth pursuit, maximum deviation, and 48 degrees onset of nystagmus. The body camera video showed defendant repeatedly moving his head during the test, contrary to Bertany's instructions. When corrected, defendant agreed by saying "okay" and briefly stopped moving his head. At times, defendant stopped following Bertany's finger and shifted his eyes to look elsewhere. The video also showed defendant complied with directions to stand in certain spots, keep his arms at his sides, and stand facing Bertany.

¶ 9        Bertany next administered the walk and turn test. Where only two are needed to indicate impairment, defendant showed five out of eight possible clues, including stepping off the line, missing heel to toe, making an improper turn, pausing during the test, and taking an improper number of steps. In the body camera video, Bertany told defendant he needed to listen when he attempted to perform the test before Bertany had finished giving instructions. Defendant responded by asking if Bertany spoke Spanish. Bertany said no and stated that defendant spoke and understood English. Bertany then resumed demonstrating the full test by taking nine heel-to-

3

toe steps forward and back, counting each step out loud. Defendant took at least 12 steps forward and 12 steps back during the test. Defendant did not turn correctly, paused while performing the test, and raised his arms in front of himself momentarily.

¶ 10        After demonstrating the one-leg stand test and providing instructions, Bertany asked defendant if he understood. Defendant replied, "not really." When asked what he did not understand, defendant turned to another officer standing nearby and asked if she spoke Spanish. The assisting officer indicated that she did not speak Spanish. Bertany told defendant that his English was "pretty good" and pointed out that defendant had understood him throughout their interaction. Bertany demonstrated the test again and explained that defendant needed to raise his leg "seis inches off the ground" while counting out loud, which Bertany proceeded to do in Spanish. Bertany then asked defendant again if he understood and defendant responded affirmatively. When Bertany asked defendant if he was sure, defendant replied, "Yeah, I have no good balance." Defendant attempted the test by lifting one leg with his arms outstretched, but quickly stopped and said, "No, no balance." Bertany then asked defendant to submit to a preliminary breath test. Defendant shook his head and said, "I can't, I can't."

¶ 11        Bertany determined defendant was under the influence of alcohol and unable to safely operate a motor vehicle based on his driving, observable signs of impairment, admission to consuming alcohol, and performance on the field sobriety tests. Bertany informed defendant he was under arrest. Defendant asked Bertany if his friend could take his vehicle and Bertany explained that the vehicle would be towed. Defendant was transported to the police station, where he refused to provide a sample for breath analysis testing.

¶ 12        Bertany testified that the assisting officer conducted an inventory search of defendant's vehicle after his arrest and discovered a bottle of alcohol behind the driver's seat. Defense

4

counsel lodged a hearsay objection against Bertany's testimony regarding the amount of alcohol the assisting officer told him was left inside the bottle. The court sustained the objection.

¶ 13    Defense counsel moved for a directed verdict, primarily arguing that defendant's performance on the field sobriety tests and refusal to submit to breath analysis testing were due to his inability to fully understand English. The court granted the motion in part and dismissed the illegal transportation of alcohol charge, stating that the evidence presented by the State was insufficient to determine whether the bottle found in defendant's vehicle contained any alcohol. In denying the motion as to the remaining charges, the court determined defendant demonstrated that he understood Bertany by appropriately responding to his questions and following his instructions. The court remarked that defendant was pulled over immediately after his vehicle went "way over" the shoulder line because Bertany believed "he was putting [the] public at risk." The court found that defendant had initially lied to Bertany about his alcohol consumption and that his failure to complete the one-leg stand test after he had attempted the test amounted to a valid refusal. The court concluded that defendant did not perform "that bad" on the walk and turn test but noted that defendant took at least 12 steps forward and 12 steps back despite Bertany demonstrating the entire test, including counting out each of the 9 steps in both directions. In addition to moving his head during the HGN test, the court stated that defendant's eyes shifting to look elsewhere reflected an inability to concentrate and served as an indicator that defendant was under the influence of alcohol.

¶ 14    The State then moved to dismiss the charge for driving without a valid license, which the court granted. Defendant declined to testify and did not present any evidence.

¶ 15    The court found defendant guilty of DUI and improper lane usage and sentenced defendant to one year of conditional discharge. In rendering its decision, the court noted:

5

"I'm not certain what the law is with regard to implied consent, so I'm—I can't say exactly what it is, but there are many, many languages in this world. *** We don't always have an interpreter on tap for everyone. But when someone gets a drivers' license, there's an implied consent, and they—they say, listen, this may not be my first language, but I understand I've got to learn what the word yield means, I have to learn what the word merge means, and I give implied consent, should there be reasonable suspicion that I might be under the influence of alcohol, to take these types of tests. And we can't place the burden on the rest of the world to learn 500 languages when somebody gets pulled over.

Now, I don't think the defendant was falling down drunk. I don't think he was drunk at all, but the law doesn't say that he has to be drunk. There's a difference between being drunk and being under the influence of alcohol.

Being under the influence of alcohol means that you're not driving at a hundred percent or, as the law may put it, at about 95 percent, and that puts people at risk. And so society has an obligation to try and protect those who aren't intoxicated or otherwise innocent from being victims of people who have consumed alcohol and who are driving unsafely."

The court determined that even though defendant was not intoxicated, the evidence established beyond a reasonable doubt that he was under the influence of alcohol and was not driving safely. Defendant filed a motion to reconsider, which the court denied. The court subsequently sentenced defendant to one year of conditional discharge.

¶ 16                                    II. ANALYSIS

¶ 17    On appeal, defendant argues the evidence presented at trial was insufficient to prove that he was under the influence of alcohol. Where a defendant challenges the sufficiency of the evidence, the reviewing court must view all of the evidence in the light most favorable to the prosecution and determine whether "any rational trier of fact could have found the required elements of the crime beyond a reasonable doubt." *Village of Lincolnshire v. Olvera*, 2025 IL 130775, ¶ 34. It is not our function to retry defendant, and we will not substitute our judgment for the trier of fact on issues related to the credibility of witnesses or the weight of the evidence. *Id.* "A criminal conviction will not be overturned unless the evidence is so unreasonable, improbable, or unsatisfactory as to justify a reasonable doubt of the defendant's guilt." *Id.*

¶ 18    To sustain a conviction for DUI, the State was required to prove that defendant drove or was in actual physical control of a vehicle while under the influence of alcohol. 625 ILCS 5/11-501(a)(2) (West 2022). A defendant must be intoxicated to a degree that renders him incapable of driving safely to be considered under the influence of alcohol as an element of the offense. *People v. Groebe*, 2019 IL App (1st) 180503, ¶ 57. Intoxication may be established solely through circumstantial evidence. *Id.* ¶ 58. "Circumstantial evidence is proof of certain facts and circumstances from which the fact finder may infer other connected facts which usually and reasonably follow from the human experience and is not limited to facts that may reasonably have alternative, innocent explanations." *People v. Diaz*, 377 Ill. App. 3d 339, 345 (2007). Additionally, the credible testimony of an arresting police officer alone is sufficient to sustain a DUI conviction. *People v. Gonzalez*, 2025 IL App (4th) 240384, ¶ 28. Relevant factors indicative of impairment include testimony that a defendant's breath smelled of an alcoholic beverage or that he had bloodshot eyes. *People v. Morris*, 2014 IL App (1st) 130152, ¶ 20. Additionally, any evidence of alcohol consumption is probative to the issue of impairment and a defendant's

refusal to submit to breath analysis testing is circumstantial evidence of consciousness of guilt. *Groebe*, 2019 IL App (1st) 180503, ¶¶ 58-59. Whether a defendant was intoxicated is a determination reserved for the trier of fact. *Id.* ¶ 57.

¶ 19    Here, the evidence established that Bertany observed defendant driving unsafely after he crossed the center line while completing a turn, drove his vehicle over the shoulder line twice and passed by a pedestrian at a close distance. Bertany testified defendant had a strong odor of an alcoholic beverage emanating from him and his eyes were bloodshot. Body camera video supported Bertany's testimony that defendant failed his field sobriety tests. Further, defendant admitted to consuming alcohol and refused to submit to breath analysis testing. This evidence, when taken together and viewed in the light most favorable to the prosecution, was sufficient for a rational trier of fact to find beyond a reasonable doubt that defendant was driving while under the influence of alcohol.

¶ 20    In coming to this conclusion, we reject defendant's assertion that the court's finding that he was not "drunk" undermined his DUI conviction. To find defendant guilty of DUI, the prosecution needed to prove that defendant was under the influence of alcohol to the extent that it rendered him incapable of driving safely, not that he was completely incapacitated by alcohol. See *People v. Tatera*, 2018 IL App (2d) 160207, ¶ 29. The record reflects that the court correctly made this distinction by stating that "[t]here's a difference between being drunk and being under the influence of alcohol." Although the court may have muddled its explanation of what it means to be under the influence of alcohol with a capricious reference to percentages, the court clearly articulated that the evidence established defendant was under the influence of alcohol to such a degree that he was incapable of driving safely. Accordingly, defendant's conviction is not inconsistent with the court's findings. See *People v. Phillips*, 2015 IL App (1st) 131147, ¶ 20

8

(defendant does not need to be drunk to be convicted of DUI, as the State is not required to prove a high degree of impairment).

¶ 21 Nevertheless, defendant contends that the evidence was insufficient to show that he was under the influence of alcohol because Bertany's observations alone were not proof of intoxication where there may have been an alternative explanation. In support of his contention, defendant cites *People v. Togher*, 127 Ill. App. 2d 141 (1970) (abstract of opinion), for the proposition that bloodshot eyes can be attributable to an individual's normal condition. Defendant similarly argues, without any specificity, that there may have been other reasons for his lack of balance when attempting the one-leg stand test. However, there is no evidence in the record to support any such alternative explanations, and the trier of fact has no obligation "to seek out all possible explanations consistent with innocence and raise them to a level of reasonable doubt." See *People v. Castino*, 2019 IL App (2d) 170298, ¶ 18. Defendant had the opportunity at trial to provide evidence to explain his lack of balance and failed to do so.

¶ 22 Defendant further claims that Bertany incorrectly administered the field sobriety tests. In support of this proposition, defendant cites extensively to the National Highway Traffic Safety Administration's (NHTSA) instructor guide containing standard procedures for administering the tests. However, because the NHTSA guide was not introduced at trial, it is not included in the record and cannot be considered on appeal. See *People v. Simmons*, 2019 IL App (1st) 191253, ¶ 16 (a reviewing court cannot consider matters outside the record). Notably, whether a field sobriety test was properly administered relates to the test's admissibility. *People v. Eagletail*, 2014 IL App (1st) 130252, ¶ 39. Defendant does not challenge the admissibility of the tests; he argues instead that the results were unreliable. Therefore, defendant's claim attacks the weight of

9

the evidence, which is a factual determination for the trier of fact to resolve. See *People v. Phillips*, 2015 IL App (1st) 131147, ¶ 24.

¶ 23    To that end, defendant argues that the results of his field sobriety tests were unreliable because a language barrier limited his ability to understand Bertany's instructions. While it was obvious from the videos that English is not defendant's first language, the evidence established that defendant was able to answer Bertany's questions and attempt the field sobriety tests as directed. Defendant also responded appropriately by correcting his behavior during the tests when instructed, if only momentarily, and made affirming statements indicating his understanding. Based on this evidence, the court reasonably concluded defendant demonstrated an adequate understanding of Bertany's instructions and weighed the results of the field sobriety tests accordingly. Although the court's comment regarding the impracticality of expecting police officers to learn "500 languages" was ineloquently stated, it is true that the presence of a language interpreter during field sobriety testing is not a right required by law because the interpreter serves to assist the arresting officer in collecting evidence and is not there for the benefit of the motorist. See *People v. Garcia-Gutierrez*, 2019 IL App (3d) 180283, ¶ 34. Moreover, even if we were to disregard the results of defendant's field sobriety tests, Bertany's credible testimony along with defendant's refusal to provide a breath sample would be sufficient to sustain defendant's DUI conviction. See *Groebe*, 2019 IL App (1st) 180503, ¶ 58; *Morris*, 2014 IL App (1st) 130152, ¶¶ 21-22.

¶ 24                                III. CONCLUSION

¶ 25    The judgment of the circuit court of Du Page County is affirmed.

¶ 26    Affirmed.

10