# Illinois Official Reports

## Appellate Court

*People v. Phillips*, 2015 IL App (1st) 131147

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JERMAINE PHILLIPS, Defendant-Appellant. |
| District & No. | First District, Second Division<br>Docket No. 1-13-1147 |
| Filed | October 20, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. TW-271-227; the Hon. Cynthia Y. Cobbs, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Michael J. Pelletier and Benjamin Wimmer, both of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg and Miles J. Keleher, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE HYMAN delivered the judgment of the court, with opinion.<br>Justices Neville and Simon concurred in the judgment and opinion. |

**OPINION**

¶ 1    Defendant Jermaine Phillips seeks reversal of his driving under the influence (DUI) conviction on the basis that the evidence failed to prove his guilt beyond a reasonable doubt in that: (i) he had a blood-alcohol concentration of 0.059; (ii) the police officer improperly administered one of the field-sobriety tests; and (iii) the other circumstantial evidence of his guilt was weak. We affirm. The State presented sufficient evidence from a credible officer that Phillips emitted a strong odor of alcohol, exhibited slightly slurred speech, had bloodshot eyes, and performed poorly on the field-sobriety tests.

¶ 2                                    Background

¶ 3    The State charged Jermaine Phillips with three driving-related offenses: (i) driving under the influence of alcohol (625 ILCS 5/11-501(a)(2) (West 2010)); (ii) driving under the combined influence of alcohol, other drugs, or intoxicating compounds (625 ILCS 5/11-501(a)(5) (West 2010)); and (iii) driving with an inoperable rear registration light (Chicago Municipal Code § 9-76-050(d) (added July 12, 1990)).

¶ 4    At a bench trial, Officer Curia of the Chicago police department, after testifying to his training in DUI detection and investigations, stated that at 8:49 p.m. on November 6, 2011, he saw Phillips' car traveling eastbound on East 79th Street with "no registration light." Curia pulled Phillips' car over, approached Phillips, and requested his driver's license and insurance. While speaking with Phillips, Curia "detected a strong odor of alcohol, slightly slurred speech, [and] red glossy bloodshot eyes." Curia saw a cup in the center console filled with "some kind of darker liquid" but was unsure exactly what kind of liquid.

¶ 5    After Curia ran Phillips' license through the police database, he returned to Phillips' car and noticed that the cup in the center console was gone. The interior of the car "smelled like alcohol," and the passenger seat and part of the floor appeared wet. Curia opened Phillips' glove box in which he found the cup. But, Curia was not entirely sure whether his observations concerning the missing cup occurred after returning to Phillips' car or later in his investigation. Curia requested Phillips get out of his car to perform field-sobriety tests. Phillips "seemed kind of out of it, like a little disoriented" and generally, "not sure what was going on."

¶ 6    The first test Curia administered, the horizontal gaze nystagmus (HGN) test, observes the driver's eyes to detect alcohol in his or her system. Curia had received training in performing the HGN test. The presence of four or more clues indicates the suspect may be under the influence of alcohol. Phillips exhibited five clues. Curia then administered the walk-and-turn test. He explained and demonstrated to Phillips how to perform the test. On the walk-and-turn test, Curia stated there were seven clues of impairment, and a person needed to exhibit only two clues to indicate impairment. Phillips exhibited exactly two clues: he used his arms to maintain balance and failed to touch heel to toe on his ninth step. Next, Curia administered the one-leg-stand test. He explained and demonstrated to Phillips how to perform the test. On the one-leg-stand test, Curia indicated there were four clues of impairment, and Phillips only exhibited one clue: he used his arms slightly to maintain balance. There was no indication in Curia's testimony that Phillips failed that test. Finally, Curia performed the HGN test one more time to confirm the original result.

¶ 7      Curia stated that he observed people under the influence of alcohol "thousands" of times in his personal life, including from experiences working at a bar, and "many" times as a police officer. Based on these experiences, as well as his interactions with Phillips, smelling a strong odor of alcohol on Phillips' breath and observing the clues of impairment on the field-sobriety tests, Curia determined that Phillips was under the influence of alcohol.

¶ 8      Curia placed Phillips under arrest and took him to the police station. There, at 9:16 p.m., Curia read Phillips the "Warning to Motorists." About 20 minutes later, Phillips agreed to submit to a Breathalyzer test, which revealed Phillips had a 0.059 blood-alcohol concentration. The parties stipulated to this fact before trial. Phillips admitted to Curia that he drank "some wine" and smoked "a half a piece of a blunt," a colloquialism for cannabis rolled up in a cigar. Phillips admitted to smoking the blunt around 3 p.m., but the drinking occurred at an unspecific time.

¶ 9      On cross-examination, Curia acknowledged that Phillips did not have any problems pulling his car over when prompted. He also admitted to never smelling the liquid in the center console that was in the cup, but noted the liquid spilled in the car smelled like alcohol. Phillips did not have any drugs on him or in the vehicle. When discussing the field-sobriety tests, Curia was not sure how close his pen, which was the stimulus Phillips was instructed to look at during the HGN test, was to Phillips' eyes. Curia agreed that during the one-leg-stand test, Phillips used his arms for balance "very little." Phillips also knew what city he lived in, the approximate time, date, day of the week and his direction of travel when he was pulled over.

¶ 10      The State rested, and Phillips moved for a directed finding on all counts. The trial court granted the motion with respect to the count of driving under the combined influence of alcohol, other drugs, or intoxicating compounds, but denied the motion on the other two counts.

¶ 11      Phillips called Officer Curia as a witness. After watching the video of Phillips' field-sobriety tests, Curia stated that to "the best of [his] knowledge" he gave Phillips the option of performing the tests. Curia "believe[d]" he had to explain the tests to Phillips twice, but "for the most part," Phillips "seemed like he understood" the instructions. Curia readministered the HGN test to "verify" what he saw in the original test. Phillips did not present any other evidence or testify.

¶ 12      After argument, the trial court found Phillips guilty of both driving under the influence of alcohol and driving with an inoperable rear registration light. In finding Phillips guilty of driving under the influence of alcohol, the court found the "officer's testimony was credible." The court recounted the visual clues from Curia's interactions with Phillips indicating he was under the influence of alcohol. Additionally, the court stated that the officer's depiction of the walk-and-turn test matched what the court witnessed in the video. While the court mentioned that Phillips' blood-alcohol concentration was 0.059, which was less than 0.08, it determined "circumstantial evidence" provided sufficient proof of Phillips being under the influence of alcohol.

¶ 13      The trial court denied Phillips' motion to reconsider the court's finding of guilt and sentenced Phillips to two years' conditional discharge, a victim impact panel, and 100 hours of community service.

¶ 14 Analysis

¶ 15 Phillips contends that the State failed to present sufficient evidence to prove beyond a reasonable doubt he drove under the influence of alcohol. Specifically, he argues that: (i) his 0.059 blood-alcohol concentration statutorily forbids a presumption of being under the influence of alcohol; (ii) the officer failed to properly administer the HGN tests, which affords the tests no probative value; and (iii) the other circumstantial evidence presented by the State was weak.

¶ 16 In reviewing a challenge to a conviction based on the sufficiency of the evidence, we view the evidence in the light most favorable to the State and decide whether any rational trier of fact could find all the elements of the crime proven beyond a reasonable doubt. *People v. Brown*, 2013 IL 114196, ¶ 48 (citing *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979)). All reasonable inferences must be allowed in favor of the State. *People v. Lloyd*, 2013 IL 113510, ¶ 42. We will not overturn a conviction unless the evidence is "so unreasonable, improbable, or unsatisfactory as to justify a reasonable doubt of the defendant's guilt." *Brown*, 2013 IL 114196, ¶ 48. Though we carefully examine the evidence, we accord proper deference to the trial court's factual findings because it was in a "superior position to assess the credibility of witnesses, resolve inconsistencies, determine the weight to assign the testimony, and draw reasonable inferences therefrom." *People v. Vaughn*, 2011 IL App (1st) 092834, ¶ 24.

¶ 17 To sustain a conviction for driving under the influence of alcohol, the State has to prove that Phillips, while in "actual physical control" of a car, was "under the influence of alcohol." 625 ILCS 5/11-501(a)(2) (West 2010); see *People v. Eagletail*, 2014 IL App (1st) 130252, ¶ 36. Phillips does not dispute he was in "actual physical control," thus, the only issue concerns whether he was "under the influence of alcohol." 625 ILCS 5/11-501(a)(2) (West 2010).

¶ 18 To be "under the influence of alcohol" (*id.*), a defendant must be "under the influence to a degree that renders the driver incapable of driving safely." *People v. Love*, 2013 IL App (3d) 120113, ¶ 34. Circumstantial evidence may be used to prove this. *Eagletail*, 2014 IL App (1st) 130252, ¶ 36. The testimony of a single, credible police officer may alone sustain a conviction for driving under the influence of alcohol. *People v. Halerewicz*, 2013 IL App (4th) 120388, ¶ 24.

¶ 19 Officer Curia, whose testimony the trial court considered "credible," testified that after he pulled Phillips over, Phillips exhibited slurred speech, a "strong" odor of alcohol, and bloodshot eyes. When Curia requested Phillips get out of the car so he could administer field-sobriety tests, Curia noticed that Phillips was "kind of out of it, like a little disoriented" and "not sure what was going on." Phillips then proceeded to fail two of the three field-sobriety tests, the HGN and walk-and-turn tests. See *People v. Janik*, 127 Ill. 2d 390, 402-03 (1989) (finding sufficient evidence to prove defendant guilty of driving under the influence of alcohol where an officer testified as to defendant's "odor of liquor," "watery eyes," and "poor test performance" on field-sobriety tests); *Eagletail*, 2014 IL App (1st) 130252, ¶ 38 (finding sufficient evidence to prove defendant guilty of driving under the influence of alcohol where officers testified defendant had a "strong odor of alcohol on [her] breath," admitted to consuming some alcohol before driving, and failed all three field-sobriety tests). Moreover, when Curia returned to Phillips' vehicle after running his name through a police database, the cup in the center console was conspicuously missing.

Instead, Curia noticed that the passenger seat and part of the floor was wet with a liquid that smelled like alcohol. Curia found the cup in Phillips' glove box. A trier of fact could reasonably infer Phillips' consciousness of guilt regarding his consumption of alcohol from his act of removing the cup in the center console. Finally, Phillips admitted to Curia that he drank "some wine," though at an unspecified time. Accordingly, viewing the evidence in the light most favorable to the State, a rational trier of fact could have found Phillips was driving under the influence of alcohol.

¶ 20    We note, as the State conceded in closing argument, that this is not a case involving a "completely drunk or wasted" defendant, and the law does not require the State to prove a high degree of impairment. That the trial court could have found otherwise does not offer a sufficient justification on which to reverse the findings.

¶ 21    Nevertheless, Phillips contends that his 0.059 blood-alcohol concentration "undercut the normal probative value" of the field-sobriety tests "because they have been statistically associated with [blood-alcohol concentrations] in excess of .10. [Citation.]" Phillips' argument confuses the conclusion with the facts supporting it. While sufficient clues exposed during field-sobriety testing do suggest a problematic blood-alcohol concentration, Phillips attempts to distort this inference. He argues, unpersuasively, that a blood-alcohol concentration below the legal limit essentially infers lack of impairment. But that argument ignores section 11-501.2(b)(2) of the Illinois Vehicle Code (625 ILCS 5/11-501.2(b)(2) (West 2010)), which provides that a blood-alcohol concentration below the legal limit, but above 0.05, only eliminates the presumption of impairment, and nothing more. It does not erase the clues or the natural probative value of the clues. Phillips displayed some clues of impairment on the field-sobriety tests. While he did not display enough clues to create the inference that his blood-alcohol concentration was over 0.10, "[i]ntoxication is a question of fact and may be proved in a number of ways." *Love*, 2013 IL App (3d) 120113, ¶ 35.

¶ 22    Second, Phillips contends that his concealment of the cup in the center console may demonstrate a consciousness of guilt for an open-container violation (see 625 ILCS 5/11-502 (West 2010)), but does not logically suggest any concealment of "evidence regarding any impairment or the presence of alcohol in his body." We disagree. Whether the missing cup reasonably implied consciousness of guilt of alcohol impairment (see *People v. Jones*, 2014 IL App (3d) 121016, ¶ 19), is a fact question for determination by the trier of fact. Moreover, the cup serves as additional evidence of Phillips' alcohol consumption at some time shortly before his arrest.

¶ 23    Third, Phillips directs our attention to the State's failure to cite any Illinois case where "a court has upheld a conviction for driving under the influence of alcohol based solely on slurred speech, the momentary use of arms for balance and the failure to touch heel-to-toe on one step of a field sobriety test." But, Phillips provides no cases reversing a defendant's conviction for driving under the influence of alcohol under those narrow conditions. Simply because no case has affirmed over a claim of insufficient evidence based on a specific iteration of facts does not mean the facts are incapable of supporting a conviction.

¶ 24    Fourth, Phillips argues that the HGN test has "no probative value" because Curia did not administer it in accord with National Highway Traffic Safety Administration (NHTSA) protocol. Phillips points to the NHTSA requirement that the stimulus the subject tracks during the HGN test be held 12 to 15 inches from the subject's eyes. See *People v. Borys*, 2013 IL App (1st) 111629, ¶ 39 (stating "[o]ur review of the NHTSA [manual] *** indicates

that the stimulus must be positioned approximately 12 to 15 inches from the suspect's nose and slightly above eye level"). Phillips argues that Curia "clearly [held] the stimulus fewer than 12 inches away" from Phillips' eyes during both tests. At trial, Curia did not remember how far away he held the stimulus from Phillips' eyes. As for the video footage of the test, we find it to be inconclusive on the distance. Further, because Phillips does not challenge the admissibility of the HGN test on appeal, but rather its probative value, his challenge goes to the weight accorded to this evidence, which is a factual determination reserved for the trier of fact. See *People v. Hutchison*, 2013 IL App (1st) 102332, ¶ 37 (stating that "[i]t is well settled that *** the weight of the evidence" is a matter "for the trier of fact to resolve," and reviewing courts will "not retry the defendant or substitute its judgment for that of the trier of fact on those points"). Even if we disregard the failed HGN tests, in light of the other evidence of Phillips' guilt, a rational trier of fact still could have found Phillips guilty. See *Halerewicz*, 2013 IL App (4th) 120388, ¶ 24 ("The credible testimony of the arresting officer by itself is sufficient to sustain a conviction of driving under the influence.").

¶ 25    Finally, Phillips highlights various weaknesses in the other circumstantial evidence elicited by the State. First, Phillips argues his odor of alcohol, bloodshot eyes, and admission to drinking some wine all indicate that he had consumed alcohol at some point, but not that he "was mentally or physically impaired by it." Phillips also maintains that the only evidence of "physical discoordination" were his slightly slurred speech, his brief use of his arms for balance during the one-leg-stand test, and his failing to touch heel to toe on one step of the walk-and-turn test. According to Phillips, "for the most part," he had no trouble interacting with Curia and had "no confusion regarding where he was, what time it was, or what was happening."

¶ 26    Basically all of these arguments ask us to reweigh the evidence against Phillips and usurp the function of the trial court as the trier of fact. We decline to oblige. See *People v. Davis*, 2014 IL App (4th) 121040, ¶ 28 (denying a defendant's request to "reweigh the evidence"); *Love*, 2013 IL App (3d) 120113, ¶ 35 (stating "[i]ntoxication is a question of fact and may be proved in a number of ways" such as through "testimony that a defendant's breath smelled of alcohol and that her eyes were glassy and bloodshot"); *People v. Hires*, 396 Ill. App. 3d 315, 318 (2009) (stating "[i]ntoxication is a question of fact, which is the trier of fact's responsibility to resolve"). While a trial court's findings of fact are not conclusively binding on us, the weaknesses in the evidence Phillips highlights do not move us to conclude that the evidence of his guilt was "so unreasonable, improbable, or unsatisfactory as to justify a reasonable doubt of [his] guilt." *Brown*, 2013 IL 114196, ¶ 48.

¶ 27                                        Conclusion

¶ 28    Affirmed.