2025 IL App (1st) 231646-U

No. 1-23-1646

Order filed June 18, 2025

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 22 CR 6094 |
| | ) | |
| ANTONIO GODINES, | ) | Honorable |
| | ) | Timothy J. Joyce, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE D.B. WALKER delivered the judgment of the court.
Presiding Justice Lampkin and Justice Reyes concurred in the judgment.

**ORDER**

¶ 1    *Held*:    We affirm defendant's conviction for aggravated driving under the influence of alcohol over his challenge to the sufficiency of the evidence.

¶ 2    Following a bench trial, defendant Antonio Godines was convicted of aggravated driving under the influence of alcohol (DUI) (625 ILCS 5/11-501(a)(2), (d)(1)(A) (West 2022)) and sentenced to two years' probation. He appeals, arguing the State failed to prove he was impaired by alcohol. We affirm.

¶ 3    Defendant was charged by indictment with aggravated DUI following an incident on February 12, 2022. The indictment also alleged that defendant had committed two prior DUI violations.

¶ 4    At trial, Oyin Owei testified that on February 12, 2022, around 2 a.m., he was in his vehicle, stopped at a red light in Chicago for a "minute or two," when something hit his vehicle from behind. Owei exited his vehicle, concerned it "was going to blow up from all the smoke." Owei saw the rear of his vehicle was "smacked inside" and called the police. In the vehicle that collided with his own, Owei saw a man in the driver's seat and a woman in the passenger seat. They remained inside the vehicle for three to four minutes despite smoke emitting from it. The man eventually exited, "looking confused." Owei did not speak to him.

¶ 5    A surveillance camera recorded the incident. The video—which was published and has been reviewed by this court—showed a red light at an empty intersection. While the light remained red, a white vehicle collided with the rear of a silver vehicle and pushed it into the intersection. A man exited the silver vehicle within seconds, and smoke arose from the white vehicle. A minute later, a man exited the white vehicle and looked at the damage.

¶ 6    Chicago police officer Michael Phillips testified that he responded to the collision. Phillips had been a police officer for five years and had conducted approximately 400 DUI arrests. He was trained in conducting standard field sobriety tests and had taken a DUI refresher course and two classes on "advanced roadside impaired driver enforcement." At the scene, he observed that defendant "displayed glassy and watery eyes," "had slurred, low and slow, speech and a strong odor of alcohol[ic] beverage emitting from his breath," and was "slow to respond" to questions.

¶ 7     Phillips testified that his body-worn camera recorded his interactions with defendant. The footage was published and has been reviewed by this court. It showed Phillips approach defendant, who was speaking to other police officers and searching through his wallet. After approximately one minute, defendant said he did not have identification with him. Phillips testified that defendant's identification was later recovered at the police station from within the same wallet.

¶ 8     In the recording, defendant initially told the officers that "everybody was speeding," "somebody hit the brakes," and he was "not so sure it's [his] fault." About a minute later, he said he "ran into a stopped car" at a green light. He said he hit his head but was not injured and did not need an ambulance, and he did not have any medical problems that would impair his ability to drive.

¶ 9     Defendant said he was coming from "downtown," then specified Fulton Market. When Phillips asked, "What's over there," defendant paused before answering, "Restaurants." He later said he was "just hanging out downtown." When Phillips asked what he was doing, defendant paused, then answered that he was at his cousin's birthday party for part of the night. Defendant could not remember any specific place he had been.

¶ 10    Phillips asked defendant where he was going, and defendant said he was going home to Berwyn. Then a few seconds later, he said he was "heading downtown." Phillips asked, "You are heading downtown?" Defendant answered, "Yeah." Phillips said, "I thought you said you were going to Berwyn." Defendant replied, "Yeah we are going to Berwyn."

¶ 11    Phillips asked defendant how much he had to drink, and defendant said, "Nothing really." Phillips asked what he meant and "how many beers." Defendant paused for 10 seconds before giving an inaudible answer, then repeated, "Nothing really to be honest." Phillips stated he could

smell alcohol on defendant, and defendant said he "wasn't really drinking like that." He then said he had his last drink approximately an hour ago. When asked what kind of drink, defendant paused for 14 seconds until Phillips prompted him, "Was it a beer? A shot?" Defendant then answered, "Yeah, it was like a beer." Phillips asked what kind of beer, defendant paused for 12 seconds, then stated he could not remember. He could not remember how much he drank over the course of the night or whether it was a lot.

¶ 12    Phillips attempted to administer the horizontal gaze nystagmus (HGN) test. He first asked if defendant had anything wrong with his eyes; defendant said yes but refused to explain. Upon further prompting, he held up his middle fingers on both hands, asked if Phillips could see them, and said he could not see them. Phillips asked if defendant meant he had a problem with his peripheral vision, and defendant said yes.

¶ 13    Phillips twice asked defendant to step forward, and each time defendant stepped to the side. On the third try, defendant stepped forward. Phillips asked defendant to hold his head still, but defendant stepped away, saying he was "not physically able" to perform the test. Defendant refused to explain, and demanded the officers demonstrate walking in a straight line. Phillips agreed, then defendant retrieved his phone, saying he wanted to record the demonstration. Phillips and his partner asked defendant to put his phone away, saying they just needed to check him. Defendant pointed at them and said, "No, f*** you and f*** you." Phillips' partner demonstrated walking in a straight line down the sidewalk. Phillips repeatedly asked defendant to cooperate with testing, and defendant refused. Defendant said he was "sick and tired of being harassed by people like you." Defendant then went to speak to his girlfriend in his vehicle.

¶ 14    When defendant returned, he submitted to the HGN test. Phillips testified that he observed "six out of six clues," where four out of six clues indicated "consumption."

¶ 15    Next, the recording showed Phillips instruct defendant to walk in a straight line and to put one foot in front of the other. Defendant stumbled and said, "I can't do that." Phillips asked him to try his best. Defendant said, "I can't hold that position. Even if I was sober or f***ing drunk or f***ing intoxicated or like, f***ing retarded, I can't do that s***." Phillips asked why; defendant did not explain but again demanded the officers perform the test. Phillips demonstrated and asked if defendant wanted to try now; defendant said no. For approximately five minutes, defendant continually refused Phillips' requests to perform the test. At one point, defendant walked toward the street, lost his balance at the curb, and stumbled.

¶ 16    Phillips testified that he then arrested defendant under suspicion of driving under the influence of alcohol and took him to the police station, where he refused a breathalyzer test. Phillips believed defendant to have been under the influence of alcohol at the time of the incident.

¶ 17    The trial court asked whether defendant said "f*** you" on two occasions, and Phillips confirmed defendant did. The court asked, "That ever happen to you often [during] your work as a police officer, where people say 'f*** you'?" Phillips answered, "It's unusual." The court stated, "That's what I would have thought too."

¶ 18    In closing, defendant's counsel argued that the State had not proved defendant was under the influence of alcohol beyond a reasonable doubt. Counsel emphasized that defendant only admitted drinking one beer at least one hour prior and posited defendant "hit his head in the crash which could have been affecting him." Counsel further argued that even if defendant had been

impaired, if he were under the influence of another substance such as medical cannabis, prescription medication, heroin, or MDMA, "that would make him not guilty" of DUI as charged.

¶ 19    After a recess, the court issued its ruling, stating:

"I believe Mr. [Owei] without qualification. And I believe Officer Phillips without qualification. Much of what they testified to is confirmed by the [surveillance] video and by the Officer Phillips'[s] body worn camera.

Mr. Godines was winning until he said f*** you. F*** you to the officer. Because I cannot understand why anybody would say that to a Chicago Police Officer who is comporting him[self] in an eminently proper manner. Unless, your judgment is fried by [virtue] of the fact that you're under the influence of alcohol."

¶ 20    The court found defendant guilty of DUI and denied his motion for judgment notwithstanding the verdict or, in the alternative, for a new trial, and his motion in arrest of judgment. Following a sentencing hearing where the court received evidence of defendant's prior DUI convictions, the court sentenced him to two years' probation, plus alcohol counseling and 10 days in jail.

¶ 21    Defendant appeals, arguing the State failed to prove he was impaired by alcohol.

¶ 22    When considering a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the State to determine whether any rational trier of fact could have found the elements of the crime beyond a reasonable doubt. *People v. Aljohani*, 2022 IL 127037, ¶ 66. We will not retry the defendant or substitute our judgment for that of the trier of fact. *Id.* ¶ 67. We allow all reasonable inferences in favor of the State and will not reverse unless the evidence

is so unreasonable, improbable, or unsatisfactory as to create a reasonable doubt of the defendant's guilt. *Id.*

¶ 23 To sustain a conviction for DUI under section 11-501(a)(2) of the Vehicle Code, the State must prove the defendant was driving or in actual physical control of a vehicle while under the influence of alcohol. See 625 ILCS 5/11-501(a)(2) (West 2022). "A defendant is under the influence when his mental or physical faculties are so impaired as to reduce his ability to think and act with ordinary care." (Internal quotation marks omitted.) *People v. Olvera*, 2023 IL App (1st) 210875, ¶ 25. That is, "a defendant must be under the influence to a degree that renders [him] incapable of driving safely." *People v. Groebe*, 2019 IL App (1st) 180503, ¶ 57.

¶ 24 Scientific proof such as a breath or blood alcohol test is not required to establish intoxication. *Id.* ¶ 58. The trier of fact may rely solely on circumstantial evidence, including the arresting officer's observations of the defendant's conduct, speech, appearance, odor of alcohol, and ability to perform field sobriety tests. *Id.* A defendant's inability to comprehend and follow instructions may also support a finding of impairment. *People v. Tatera*, 2018 IL App (2d) 160207, ¶ 28. The testimony of a single credible police officer may sustain a DUI conviction. *People v. Phillips*, 2015 IL App (1st) 131147, ¶ 18.

¶ 25 Defendant does not dispute that he had actual physical control of his vehicle at the time of the collision. He contends only that the State failed to prove he was impaired by alcohol, arguing the trial evidence "demonstrated only [defendant's] consumption of alcohol, but not his impairment." We disagree.

¶ 26 First, defendant stated on video that he had "a beer," though he refused to elaborate. Second, Phillips's testimony and body-worn camera footage provided strong circumstantial

evidence that defendant was impaired by alcohol. Phillips testified he smelled alcohol on defendant's breath, and defendant's eyes were "glassy and watery." Video confirmed other signs of impairment, including delayed speech, confusion, agitation, stumbling, and inability to follow directions. Defendant's refusal to submit to a breathalyzer was further evidence of consciousness of guilt. See *Groebe*, 2019 IL App (1st) 180503, ¶ 59; 625 ILCS 5/11-501.2(c)(1) (West 2022) (refusal to submit to testing is admissible evidence in DUI prosecution).

¶ 27    Defendant contends the trial court "defie[d] common sense" when it stated he was "winning" until he said "f*** you." To the extent defendant argues the trial court relied solely on defendant's use of profanity toward the officer, we note that immediately prior to this comment, the trial court stated it "believe[d]" Owei "without qualification" and "believe[d] Officer Phillips without qualification." The trial court thus clearly considered the two witnesses' testimony in reaching its conclusion. In any event, we may affirm on any basis supported by the record, regardless of the trial court's stated basis. See *Beacham v. Walker*, 231 Ill. 2d 51, 61 (2008).

¶ 28    Defendant also contends that what Phillips testified was "slurred, low and slow, speech" was in fact "the normal cadence of [his] voice coupled with a slight accent." Defendant offered no evidence at trial to contradict Phillips' testimony, and we draw all reasonable inferences in favor of the finding of guilt on appeal. See *Aljohani*, 2022 IL 127037, ¶ 67. We thus infer, based on Phillips' testimony and our review of the video evidence, that defendant's speech was slurred and slow, and was not his normal speech cadence.

¶ 29    Moreover, as our supreme court has instructed, "the trier of fact is not required to disregard inferences which flow normally from the evidence and to search out all possible explanations consistent with innocence." *People v. Hall*, 194 Ill. 2d 305, 332 (2000); see also *People v. Galarza*,

2023 IL 127678, ¶ 25. Here, the inference logically flowing from the trial evidence is that defendant's consumption of alcohol on February 12, 2022, impaired his faculties to such a degree that he severely rear-ended another vehicle, struggled to answer questions and follow directions, and behaved aggressively toward police officers. In finding defendant guilty of DUI, the trial court inferred that this level of impairment had rendered defendant "incapable of driving safely." See *Groebe*, 2019 IL App (1st) 180503, ¶ 57. We allow all reasonable inferences in favor of the finding of guilt (see *Aljohani*, 2022 IL 127037, ¶ 67). This evidence was not so unreasonable, improbable, or unsatisfactory as to create a reasonable doubt of defendant's guilt. See *id.*

¶ 30    Finally, defendant argues that Phillips improperly administered the HGN test and "walk and turn" tests. Defendant forfeited these arguments by failing to raise them at trial or in a posttrial motion. See *People v. Briseno*, 343 Ill. App. 3d 953, 961-62 (2003). To the extent that these arguments are connected to his challenge to the sufficiency of the evidence—and thus not subject to waiver—we note that they in no way discredit the testimony and video evidence of defendant's slow and slurred speech, glassy eyes, confusion, agitation, stumbling, and refusal to submit to a breathalyzer. See *id.* at 962 (finding sufficient evidence supported DUI conviction even without considering the results of field sobriety tests). We also decline defendant's request to take judicial notice of the National Highway Traffic Safety Administration's "DWI Detection and Standardized Field Sobriety Test (SFST) Participant Manual," which was not introduced at trial.

¶ 31    For these reasons, we affirm the judgment of the trial court.

¶ 32    Affirmed.