2026 IL App (1st) 241513-U

No. 1-24-1513

Order filed February 4, 2026

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 23 TR 40016792 |
| | ) | |
| MONICA ARRIETA, | ) | Honorable |
| | ) | Kristyna C. Ryan, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE MARTIN delivered the judgment of the court.
Justices Rochford and Reyes concurred in the judgment.

**ORDER**

¶ 1     *Held*: Evidence at trial was sufficient to establish defendant's guilt beyond a reasonable doubt of driving under the influence of alcohol.

¶ 2     Following a bench trial, defendant Monica Arrieta was convicted of driving under the influence of alcohol (DUI), improper traffic lane usage, and operating an uninsured motor vehicle. She was sentenced to 12 months' supervision, with various conditions. On appeal, Arrieta

challenges her DUI conviction, contending that the evidence was insufficient to prove beyond a reasonable doubt that she was impaired due to intoxication. We affirm.[1]

¶ 3                                    I. BACKGROUND

¶ 4      After an October 2023 traffic stop, the State charged Arrieta with DUI (625 ILCS 5/11-501(a)(1), (2) (West 2022)) (counts I and II), improper traffic lane usage (625 ILCS 5/11-709(a) (West 2022)) (count III), and operating an uninsured motor vehicle (625 ILCS 5/3-707(a) (West 2022)) (count IV). Count I alleged that Arrieta drove under the influence of alcohol with a blood alcohol content (BAC) of 0.08 or greater. Count II alleged that Arrieta drove under the influence of alcohol.

¶ 5      Franklin Park police officer Bucaro, whose first name was not adduced at trial, testified that while on patrol around 1 a.m. on October 13, 2023, he observed a black Dodge sedan speeding eastbound on Grand Avenue. Bucaro pursued the Dodge, driving at speeds up to 73 miles per hour. Bucaro twice witnessed the vehicle's tires drifting on or over the white dividing lines on the road. When the Dodge abruptly braked, Bucaro activated his emergency lights and curbed the vehicle.

¶ 6      The State entered into evidence and published a dashboard camera video recording of Bucaro's pursuit of the Dodge. The video depicts the police vehicle traveling at a high rate of speed for roughly 90 seconds before approaching the Dodge at a red traffic light. At trial, Bucaro identified the Dodge as the vehicle he was pursuing.

¶ 7      When the traffic light changes to green, the Dodge rapidly accelerates, crosses an intersection, and drifts across the road's white lane-dividing lines. The Dodge abruptly brakes around a small curve before rapidly accelerating and drifting over the white line again. The Dodge

---

[1]In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

suddenly and continuously brakes. Bucaro activates the emergency lights on his vehicle, and the Dodge stops. Bucaro exits his vehicle and approaches the front driver's side of the Dodge.

¶ 8    Bucaro identified Arrieta in court as the driver of the Dodge. She "had a flushed face, bloodshot, watery, glassy eyes, slurred speech, drowsiness, and a strong odor of an alcoholic-based beverage emanating from her breath as she spoke." Arrieta did not have her driver's license or proof of insurance with her. She informed Bucaro that she was coming from a bar in Schiller Park where she worked. She was going home and had to use the restroom. She denied consuming alcohol prior to driving, and believed she was driving 40 miles per hour in a 30 mile-per-hour zone.

¶ 9    Bucaro testified that he received training in National Highway Traffic Safety Administration DUI detection and investigation both at the police academy and through refresher courses. His training included field sobriety tests such as the horizontal gaze nystagmus (HGN), walk-and-turn, and one-leg stand. Bucaro administered each test to Arrieta.

¶ 10    Bucaro explained that the HGN test looks for nystagmus, an involuntary jerking of the eyes due to the consumption of alcohol or another intoxicant. The test has six possible clues for impairment, and Bucaro asserted that Arrieta exhibited all six.

¶ 11    To administer the test, Bucaro moved a stimulus from side to side, 12 to 15 inches away from Arrieta's face and slightly above her eye level. Arrieta was required to follow the stimulus with her eyes without moving her head. Bucaro observed "lack of smooth pursuit in both eyes, distinct and sustained nystagmus at maximum deviation in both eyes, and onset nystagmus prior to 45 degrees in both eyes," suggesting that Arrieta consumed alcohol or another intoxicant.

¶ 12    Bucaro then administered the walk-and-turn test, which required Arrieta to walk heel-to-toe along an imaginary straight line for nine steps before turning and taking an additional nine

heel-to-toe steps, all while keeping her hands at her sides and counting her steps aloud. Arrieta was not permitted to move until instructed to do so and was required to fully complete the test once she began it. Bucaro explained that the test has eight possible clues for impairment. The first two clues present when a subject starts too early, or steps out of the starting position, after the subject is instructed not to move from the starting position. The walking phase of the test has six additional clues: "using arms for balance, stepping off the line, not touching heel-to-toe, incorrect number of steps, improper turn, and stop[ping] while walking."

¶ 13    Bucaro explained and demonstrated the test to Arrieta, who attempted it twice. On the first attempt, she demonstrated seven of the eight possible clues of impairment. She (1) stepped out of the starting position, (2) started too early, (3) failed to "touch heel-to-toe," (4) stepped off the line, (5) took an improper number of steps, (6) made an improper turn, and (7) stopped walking. Bucaro allowed Arrieta a second attempt after she stated that she failed to understand the instructions. Arrieta then demonstrated five clues of impairment: she (1) started before being instructed to do so, (2) stepped off the line, (3) failed to touch heel-to-toe, (4) made an improper turn, and (5) took an improper number of steps.

¶ 14    Bucaro then administered the one-legged-stand test, which required Arrieta to stand with her feet together, her legs straight, and her hands at her sides, while keeping one foot off the ground with the raised toe parallel to the ground and maintaining straight legs. Arrieta was required to look at her raised toe and count "1,000 one, 1,000 two, 1,000 three, and so on until instructed to stop." The four clues for impairment in the test are: placing the raised foot down, "swaying, using arms for balance, and hopping." The presence of two clues indicates impairment. Bucaro testified that Arrieta demonstrated three clues for impairment: (1) placing her foot down, (2) using her arms for balance, and (3) swaying.

¶ 15    Bucaro arrested Arrieta, transported her to the police station, read her a "Warning to Motorist" document explaining the consequences of providing or refusing to provide a breath sample, and began a 20-minute observation of Arrieta. During the observation period, Arrieta asked Bucaro for a trash can so that she could vomit. She stuck her fingers down her throat and spit into the trash can but did not appear to vomit. Bucaro restarted the 20-minute observation period, and Arrieta laid down on the lock-up bench.

¶ 16    Bucaro testified that Officer Matthew Tomaso "gave the defendant an opportunity for a breath sample." Bucaro did not testify whether Arrieta consented to the test, or as to the results.

¶ 17    Bucaro then processed, fingerprinted, and photographed Arrieta. After Bucaro read Arrieta her rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966), Arrieta stated that she had one or two shots of bourbon and was heading home from work. She added that she was not ill, diabetic, or taking insulin.

¶ 18    Bucaro opined that Arrieta was under the influence of alcohol based upon his training and experience in observing hundreds of people under the influence of alcohol, his observations and the clues presented during the field sobriety tests, and Arrieta's conduct while in lock-up.

¶ 19    The State entered into evidence and published footage from Bucaro's body camera on the night of the incident. The video depicts Bucaro curb the Dodge, speak with Arrieta, and administer the three field sobriety tests. Bucaro administers the walk-and-turn test a second time after Arrieta states that she did not understand the instructions. He also administers the one-legged stand test twice. Bucaro then arrests Arrieta, transports her to the police station, and directs her to a restroom.

¶ 20    After using the restroom, Arrieta sits on the lock-up bench. Bucaro reads aloud the "Warning to Motorist" document, and soon after, Arrieta lays down on the bench. A few minutes later, she sits up and tells Bucaro that she needs to throw up in the trash can. Bucaro places a trash

can before Arrieta. She places her fingers down her throat at least five times while leaning over, coughing and spitting into the can.

¶ 21    Arrieta tells Bucaro that she wants to force herself to vomit and must "throw up right now." She again leans over the trash can, placing her fingers down her throat at least three more times, before sliding the can back toward Bucaro. The video is unclear as to whether she vomits. She lies back down on the bench. Shortly after, she appears to lose her balance and slowly rolls off the bench but catches herself before falling on the floor.

¶ 22    Roughly 21 minutes after her last attempt to vomit, Tomaso asks Arrieta to provide a breath sample. Arrieta initially refuses. After Tomaso reminds her that refusal may result in a longer suspension of driving privileges, Arrieta agrees to provide a sample.

¶ 23    Bucaro reads Arrieta her *Miranda* rights and she admits that she drove her vehicle. She states that she left work at midnight, and that she had "a shot or two" of bourbon from 11:30 p.m. to midnight.

¶ 24    On cross-examination, Bucaro testified that Arrieta did not require support while exiting the Dodge or while walking to the sidewalk. An odor of alcohol emanated "from her breath as she was talking," but could have come from her clothing. Her eyes were watery and glassy, and her speech was slurred.

¶ 25    As Bucaro conducted the HGN test, vehicles passed by. His squad vehicle's spotlight, and a second squad vehicle's rear lights, were activated—but not the front, or the red and blue, lights. Defense counsel asked Bucaro if he had heard of optokinetic nystagmus, caused by flashing lights. Bucaro acknowledged that the topic had been covered in his training. He did not believe that passing traffic, or LED lighting on newer squad vehicles, caused nystagmus but admitted that moving analog lights "that actually turn," or headlights driving past, could cause nystagmus.

¶ 26    As to the walk-and-turn test, Bucaro recalled that "one of the clues was an incorrect number of steps." On Arrieta's second attempt at the test, she started walking too early, despite Bucaro's instructions reminding her not to begin. Arrieta did not fall, sway, stumble, or use her arm for balance during the test, or when entering or exiting the police vehicle.

¶ 27    Tomaso was called to testify as to the breathalyzer evidence. However, the court ultimately excluded the breathalyzer as evidence at trial.

¶ 28    The State rested, and the defense moved for a directed finding as to count I for DUI due to the inadmissibility of the breathalyzer evidence. As to count II for DUI, the defense argued that the State failed to show evidence of impairment. The court granted Arrieta's motion solely with respect to count I.

¶ 29    Following closing arguments, the court found Arrieta guilty as to the remaining three counts, stating that the evidence demonstrated that she "violated multiple traffic codes, including speeding and improper lane usage," and noting that Bucaro had to "accelerate up to over 70 miles an hour to catch up" to her. The court found that Arrieta's manner of driving, Bucaro's observations of "a strong odor of alcoholic beverage and bloodshot eyes," Bucaro's training and experience in observing hundreds of people under the influence of alcohol, and Arrieta's "poor performance on field sobriety tests" established she drove under the influence of alcohol.

¶ 30    The court noted that scientific proof of intoxication was unnecessary to establish Arrieta's guilt of DUI, adding that Bucaro opined that Arrieta was under the influence due to his interactions with her, and her behavior during the investigation and at the police station. The court recounted that Arrieta exhibited "multiple clues of impairment" during the walk-and-turn test, including "stepping off the starting line, not touching heel-to-toe, improper turn, stopping while walking, starting too early, and stating she did not understand even after verbal explanation and visual

demonstration," and that during the one-legged stand, Arrieta showed "multiple clues of impairment *** including improper placement of arms, putting foot down, and swaying." Although Arrieta "did not fall and her speech was comprehensible," such facts did not negate other evidence or demonstrate that she was "sober enough to exercise ordinary care as a driver."

¶ 31    Arrieta filed a motion to reconsider, alleging, *inter alia*, that the State failed to prove every element of DUI beyond a reasonable doubt. Specifically, Arrieta alleged that the State failed to show that her faculties were impaired by alcohol because her driving was not consistent with impairment, her field sobriety performance could be explained by other factors—such as her need to use the restroom—and her behavior outside of the field sobriety tests did not corroborate the test results. Arrieta further alleged that the court erred in relying upon the HGN tests due to a lack of evidentiary foundation.

¶ 32    After a hearing, the court denied Arrieta's motion to reconsider. In finding that the State met its burden as to count II for DUI, the court stated that it reviewed the video evidence and its notes from trial, and considered the totality of the circumstances, including Arrieta's behavior and "everything that occurred at the station." The court further stated, "I don't recall putting any weight into the HGN at all."

¶ 33    On count II, the court sentenced Arrieta to 12 months' supervision, with various conditions. As to counts III and IV, Arrieta was respectively sentenced to a $25 fine and supervision, and a mandatory $100 fine.

¶ 34                                    II. ANALYSIS

¶ 35    On appeal Arrieta challenges only her DUI conviction, arguing that the State failed to prove beyond a reasonable doubt that she was impaired by alcohol.

¶ 36 When reviewing a challenge to the sufficiency of the evidence, a reviewing court must determine whether, after viewing the evidence in the light most favorable to the State, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *People v. Cline*, 2022 IL 126383, ¶ 25. We will only reverse a criminal conviction if the evidence is so unsatisfactory as to raise a reasonable doubt of the defendant's guilt. *Id.* We will not retry the defendant, nor will we substitute our judgment for the of the trier of fact, "who is charged with assessing the credibility of the witnesses and the weight to be accorded their testimony, resolving conflicts in the evidence, and drawing reasonable inferences therefrom." *People v. Padilla*, 2021 IL App (1st) 171632, ¶ 42. Rather, we must allow all reasonable inferences from the record in favor of the State. *Cline*, 2022 IL 126383, ¶ 25.

¶ 37 Arrieta was charged with driving under the influence of alcohol while in actual physical control of a vehicle. 625 ILCS 5/11-501(a)(2) (West 2022). Here, she solely contends that the evidence was insufficient to prove that she was under the influence of alcohol.

¶ 38 A defendant is under the influence of alcohol when, as a result of consuming alcohol, her "mental or physical faculties are so impaired as to reduce [the] ability to think and act with ordinary care." *People v. Groebe*, 2019 IL App (1st) 180503, ¶ 57. A defendant must be under the influence to a degree that renders her incapable of driving safely. *Id.* (citing *People v. Phillips*, 2015 IL App (1st) 131147, ¶ 18).

¶ 39 Whether a defendant was intoxicated is a question of fact. *Groebe*, 2019 IL App (1st) 180503, ¶ 57. The State need not present scientific proof, such as a breathalyzer test, to establish intoxication. *Id.* ¶ 58. Rather, "[a]ny evidence of alcohol consumption is relevant to the issue of impairment." *Id.* The State "may rely solely on circumstantial evidence, such as the credible testimony of the arresting officer." *Id.*; *Phillips*, 2015 IL App (1st) 131147, ¶ 18. The trier of fact

may consider the officer's observations as to the defendant's conduct, speech, or appearance. *Groebe*, 2019 IL App (1st) 180503, ¶ 58.

¶ 40    Credible testimony that a defendant's eyes were glassy and her breath smelled of alcohol, or that she failed a field sobriety test, is relevant evidence of impairment. *People v. Morris*, 2014 IL App (1st) 130512, ¶ 20 (citing *People v. Elliott*, 337 Ill. App. 3d 275, 281 (2003)); *Groebe*, 2019 IL App (1st) 180503, ¶ 58. Refusing a breath test is circumstantial evidence of consciousness of guilt. *Groebe*, 2019 IL App (1st) 180503, ¶ 59.

¶ 41    After viewing the evidence in the light most favorable to the State, we conclude that a rational trier of fact could have found that Arrieta was impaired. Arrieta admitted that she consumed "one or two" shots of bourbon shortly before driving. *Id.* ¶ 58 (any evidence of alcohol consumption is relevant to impairment). Bucaro testified that when he curbed Arrieta's vehicle and addressed her, her face was flushed; her eyes were bloodshot, watery, and glassy; she appeared drowsy; she slurred when she spoke; and Bucaro detected a strong odor of alcohol on her breath when she spoke. See *id.* ¶ 59 (rational trier of fact could conclude that the defendant was impaired where arresting officer testified that he smelled alcohol on the defendant's breath, the defendant slurred when speaking, and the defendant had "glassy and red" eyes); *Morris*, 2014 IL App (1st) 130512, ¶¶ 21-22 (evidence sufficient to convict beyond a reasonable doubt where officers testified that they smelled alcohol on the defendant's breath, the defendant's eyes were bloodshot, the defendant failed field sobriety tests, and the defendant refused to submit a breath sample).

¶ 42    Bucaro further testified that Arrieta was under the influence of alcohol based upon all his observations. These observations, which were corroborated by video, included the way Arrieta drove prior to being pulled over—speeding, drifting into adjacent lanes, and suddenly braking; her appearance and interaction with Bucaro during the traffic stop; and her poor performance on the

field sobriety tests. See *Morris*, 2014 IL App (1st) 130512, ¶ 22. Moreover, at the police station, Arrieta repeatedly attempted to make herself vomit, exhibited balance issues while on the lock-up bench, initially refused to submit to a breathalyzer test, and admitted, after providing a breath sample, that she drank alcohol before leaving work. See *Groebe*, 2019 IL App (1st) 180503, ¶¶ 58, 59 (refusal to submit to breathalyzer test is circumstantial evidence of consciousness of guilt).

¶ 43 Arrieta raises several theories to challenge her conviction, including, *inter alia*, that her symptoms stemmed from allergies or tiredness, that gender dynamics made her nervous, that the field tests were unreasonable, and that we should ignore her poor performance on her first attempt at the walk-and-turn test due to her failure to comprehend the instructions. In doing so, Arrieta essentially asks this court to reweigh the evidence and to search for alternative explanations consistent with innocence. This we cannot do. *Padilla*, 2021 IL App (1st) 171632, ¶ 42 (it is the trial court's role to assess the credibility and weight of witness testimony, to resolve any conflicts in the evidence, and to draw any reasonable inferences from the evidence).

¶ 44 Viewed in the light most favorable to the State, we cannot say that the evidence was so unsatisfactory as to raise a reasonable doubt of Arrieta's guilt. The trial court heard Bucaro's testimony as to Arrieta's intoxication and viewed recordings of Arrieta's driving and of her condition and behavior after curbing her vehicle and while detained at the police station. Given the evidence, it was not unreasonable for the court to infer that Arrieta was under the influence of alcohol. *Cline*, 2022 IL 126383, ¶ 25.

¶ 45                                III. CONCLUSION

¶ 46 Accordingly, we affirm Arrieta's DUI conviction.

¶ 47 Affirmed.